CHARLES A. PICKREN, Petitioner v. COMMISSIONER OR INTERNAL REVENUE, Respondent
Pickren v. Comm'r
Docket No. 5328-78. United States Tax Court
T.C. Memo 1981-52; 1981 Tax Ct. Memo LEXIS 694; 41 T.C.M. (CCH) 834; T.C.M. (RIA) 81052; February 10, 1981. *694 1. Petitioner's operation of a farm was an "activity not engaged in for profit" so that losses incurred in each of the years in issue are not deductible pursuant to sec. 183, I.R.C. 1954. 2. Petitioner failed to prove that his basis in real property sold in 1974 was greater than determined by respondent. 3. Mobile homes purchased by petitioner in 1975 did not qualify for investment credits under sec. 48(a)(3), I.R.C. 1954. 4. Petitioner is liable for the sec. 6651 (a)(1) additions to tax for each of the years at issue and for the sec. 6653(a) addition to tax for 1975. Stanley E. Marable, for the petitioner. Roger D. Osburn, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's income tax: Additions to tax, I.R.C. 1954
Year
Deficiency
sec. 6651(a)(1)
sec. 6653(a)
1973
$ 4,498.45
$ 1,124.61
1974
2,864.79
716.20
1975
11,219.72
2,243.94
$ 612.72
1976
3.264.89
325.49
*699 Due to concessions by the parties, the issues remaining for decision are: 1. Whether petitioner's operation of a farm was an activity not engaged in for profit so that losses incurred in each of the years in issue are not deductible pursuant to section 183, I.R.C. 1954. [1]
2. Whether petitioner's basis in real property sold in 1974 was greater than determined by respondent, thereby resulting in a smaller gain on the sale than determined by respondent. 3. Whether certain mobile homes purchased by petitioner in 1975 qualify under section 48(a)(3) for investment credits. 4. Whether petitioner is liable for the section 6651(a) (1) additions to tax for each of the years at issue and the section 6653(a) addition to tax for 1975. FINDINGS OF FACT Some of the facts were stipulated and they are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Charles A. Pickren (hereinafter petitioner) is an individual who resided in Mascotte, Fla., at the time *700 his petition was filed in this case. Petitioner filed returns for each of the calendar years in issue with the Director, Internal Revenue Service Center, Southeast Region, Chamblee, Ga.
As of the time of trial, petitioner was 48 years old and had completed the fifth grade of school. Since 1966, he had been in the businss of harvesting fruit on a piece-rate basis and he hired a crew of workers to harvest the fruit. The actual harvesting of fruit took place for 5 or 6 months per year and the remainder of the year was spent preparing for the harvesting season. Farm Operation
On November 20, 1973, petitioner purchased for $ 70,000 a 240-acre farm in McDonald County, Mo. The farm contained mostly timberland and it is located in the mountains. When purchased by petitioner, the farm was in poor shape and it contained no habitable dwelling. Petitioner purchased the farm with the intent of working on it during the summer months when he did not work harvesting fruit. Petitioner did not work on the farm during 1973. In 1974 he transported a small tractor to the farm for his use in working on the farm, and during that year he worked on the farm for 3 weeks. During 1975 petitioner *701 worked on the farm for 2 weeks and during 1976 he worked on it for 2-3 weeks. At no time during any of the years in question did petitioner harvest any timber, [2] raise or sell (or have anyone else raise or sell) any crops, buy any livestock to raise, or in any way earn any income from this farm. Petitioner did allow a neighbor to graze his cattle on the property. In return therefor, the neighbor did some work on the farm for petitioner. On his returns for the years in issue, petitioner claimed as business expenses the following expenditures with respect to the farm. [3]
1973
1974
1975
1976
Repairs
$ 500
$ 225
$ 150.00
Seed, plants purchased [4]
1,000
240.00
Gasoline, fuel, oil
50
65
75.00
$ 55.00
Taxes
90
140
150.00
397.50
Land clearing
200
150
300.00
Road repair
200
Travel
706
720
720.00
600.00
Legal fees
225
Depreciation
250
1,142
1,142.86
1,142.86
Labor hired [4]
200
300.00
100.00
Interest
4,125
2,250.00
1,877.76
Supplies
120
200.00
Food and lodging
168
175.00
300.00
3,221
7,055
5,702.86
4,473.12
*702 Since petitioner did not receive any income from the farm in any of the years involved, deduction of the foregoing expenditures resulted in a claimed losses equal to the total deductions. In the statutory notice of deficiency, the claimed farm losses were disallowed in their entirety because: It is determined that farm losses claimed in the taxable years 1973 to 1976, inclusive, were not incurred in transactions entered into for profit and, accordingly, are not allowable under Section 165(a) of the Internal Revenue Code of 1954, but are subject to the limitations of Section 165(c)(1) and (2) of the Internal Revenue Code of 1954 as well as Section 183. Accordingly, your taxable income is increased in the amounts of $ 3,221.00, $ 7,055.00, $ 5,702.86, and $ 4,473.12, respectively. Respondent did allow itemized deductions for the interest and taxes paid with respect to the farm for 1974, 1975, and 1976. No similar adjustment was made for 1973 since it was more advantageous to allow petitioner *703 a standard deduction rather than itemized deductions. Real Property Sale
In 1968, petitioner purchased real property for $ 5,000, which land he sold for $ 15,000 in 1974. Closing costs of $ 1,565.50 were incurring in the sale. Sale of this property was not reported by petitioner on his income tax returns. In the statutory notice of deficiency, respondent determined that petitioner had total long-term capital gain of $ 8,434.50 ($ 15,000 - ($ 5,000 + $ 1,565.50)) from the sale and, after application of section 1202, a net taxable capital gain of $ 4,217.25. Investment Credit
In 1975 petitioner purchased a mobile home park in Lake County, Mascotte, Fla. This is where petitioner presently resides. Located on the property at the time of the purchase were a one-story, concrete-bock apartment building and five or six mobile homes. [5] Petitioner lived in one of the mobile homes and rented the remainder. Apparently, the tenants who rented the other mobile homes were individuals recruited by petitioner to work as members of crews he formed to harvest fruit. These individuals stayed in the rented mobile homes for varying lengths of time, some stayed for 1 or 2 weeks *704 and some stayed for 2 or 3 months. The turnover of tenants who rented the mobile homes was sizeable. Additions to Tax
Petitioner's income tax returns for 1973, 1974, and 1975 were signed by petitioner on July 10, 1976, and were received by the Internal Revenue Service Center on July 19, 1976. The return for 1973, the only yer of these 3 for which such evidence was introduced, was mailed in an envelope postmarked on July 14, 1976. Petitioner's income tax return for 1976 was signed by him on July 7, 1977, was mailed in an envelope postmarked on July 7, 1977, and was received by the Internal Revenue Service Center on July 11, 1977. Petitioner knew when his returns were due. During the period at issue, petitioner retained an individual to prepare his returns. Requests for extensions of time within which to file the returns for the years 1973, 1974, and 1975 were not made. A request for an extension was filed, on an undisclosed date, for the year 197l. By letter *705 dated May 3, 1977, petitioner was notified that his request was not granted because payment of his estimated tax was not attached to his request. Petitioner was also informed in the letter that no penalty would be imposed if within 10 days of the date of the letter he would file a return and pay the tax due. Gross receipts were understated on petitioner's return for 1975 in the amount of $ 24,149.62. Apparently, petitioner's tax return preparer analyzed deposits made to petitioner's bank account during the taxable year to ascertain the gross receipts amount reported on the returns. The under-statement resulted from petitioner's failure to deposit all checks he received. Respondent's agent determined the amount by which gross receipts were underroported, which amount petitioner concedes is correct, by analyzing petitioner's books and records and by contacting businesses which issue checks to petitioner. In the statutory notice of deficiency, respondent determined that section 6651(a)(1) additions to tax were applicable for each of the years 1973 through 1976. In addition, respondent determined that a section 6653(a) addition to tax was applicable for 1975. This latter determination *706 was based principally on the understatement of gross receipts.
OPINION Farm Operation
In November 1973, petitioner purchased a farm in Missouri, and for each of the taxable years 1973-1976 petitioner incurred various expenses with regard thereto which he deducted as business expenses. Because petitioner earned no income from the farm, deduction of the farm expenses resulted in claimed losses equal to the total deductions. In the statutory notice of deficiency, respondent disallowed the claimed losses on the ground that petitioner had not incurred the expenditures in transactions entered into for profit. The questions to be decided is whether petitioner's operation of the farm was an "activity * * * not engaged in for profit" within the meaning of section 183(a). For purposes of that section, section 183(c) defines an activity not engaged in for profit as follows: (c). Activity Not Engaged in for Profit Defined.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. In the event *707 an activity is not engaged in for profit, sections 183(a) and (b) limit allowable deductions to those deductions allowable regardless of whether the activity is engaged in for profit (i.e., taxes and interest), section 183(b)(1); and, to the extent of gross income derived from the activity reduced by the deductions allowable under section 183(b)(1), those deductions which would be allowable if the activity had been engaged in for profit, sec. 183(b)(2). [6]
"The test for determining whether an individual is carrying on a trade or business so that his expenses are deductible under section 162 [and not limited by sec. 183] is whether the individual's primary purpose and intention in engaging in the activity is to make a profit." Golanty v. Commissioner,72 T.C. 411, 425 (1979), on appeal (9th Cir., Aug. 31, 1979); Allen v. Commissioner,72 T.C. 28 (1979). Whether petitioner had the requisite intent is a question of *708 fact which must be determined on the basis of all the facts and circumstances. Golanty v. Commissioner,supra at 426; sec. 1.183-2(a), Income Tax Regs. Petitioner has the burden of proving such intent, Boyer v. Commissioner,69 T.C. 521, 537 (1977), and he need only prove that his expectation of making a profit was bona fide; he need not prove that it was reasonable. Golanty v. Commissioner,supra; sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., sets forth various factors, principally drawn from prior case law, see Boyer v. Commissioner,supra, to be considered in making the necessary determination. The factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that assets used in the activity would appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income *709 or losses with respect to the activity; (7) the amount of occasional profits, if any, which were earned; (8) financial status of the taxpayer; and (9) elements of personal pleasure or recreation. No one factor is determinative, nor is the list all inclusive. Sec. 1.183-2(b), Income Tax Regs.
Petitioner purchased the farm with the intent of working on it during the summer months when he did not work as a fruit harvester and he did work on it for a few weeks during the summer of each of 1974, 1975, and 1976. Since the farm was in poor condition when he purchased it, the work done by petitioner included such things as repairing fences and clearing land of underbrush. Petitioner did not harvest any timber from the property, raise or sell (or have anyone else raise or sell) crops on the farm, or buy any livestock to raise on the farm. Apparently, except during those limited periods when petitioner worked on it and when petitioner's neighbor's cattle were allowed to graze on it, the farm was unattended. An analysis of petitioner's operation of the farm in terms of the suggested factors leads us to the conclusion that it was an activity not engaged in for *710 profit. While it is reasonable that, even in an activity engaged in for profit, losses would be incurred during the initial years of the activity, the manner in which petitioner operated the farm is not indicative of a bona-fide intent to make a profit. We are initially directed to the conclusion by the fact that petitioner expended very little time or money in trying to change the condition of the farm. If the farm was in as poor a condition as claimed by petitioner, it is difficult to believe he had a bona-fide intention of making it profitable when he only worked on it for a few weeks during the summer in each year following his purchase of the farm. It may be that petitioner's fruit-harvesting business would not allow him more time to devote to the farm, although the fruit-harvesting seasons lasted only 5 to 6 months. Such a fact, however, would weigh against a finding that the farming operation was engaged in for profit. Petitioner did not indicate that he had any intent or prospects of spending more time on the farm in the future. Additionally, petitioner must have anticipated that such time as he could devote during the summer would be insufficient to make the farm profitable. *711 This is especially important when it is considered that the Missouri farm was a considerable distance from petitioner's Florida home so that petitioner would not be able to work on the farm part-time or during unexpected lulls in his fruit-harvesting business. Moreover, it appears that petitioner's farm was unattended during those periods when petitioner was not present. Such a circumstance is inconsistent with a bona-fide intent to make a profit from farming. Nor did petitioner expend much money in connection with the farm. An examination of the amounts deducted in connection with the farm reveals that the majority were not the type of expenditures which would affect positively the farm's conditions. Only limited amounts were expended for such items as repairs, seed, and land clearing. The larger deductions, for such items as taxes, depreciation, interest, travel and food and lodging, were for items which would not improve the condition of the farm. In summary, we are not convinced that petitioner had the requisite intent in engaging in the farming activity so that the expenses incurred are deductible under section 162. The principal impression left by petitioner's testimony *712 is that he purchased the farm so that he would have something different to do during the summers and that he enjoyed working on the farm. While certainly included within his reasons was the hope that the farm would eventually become profitable or appreciate in value, this was not his primary purpose and intention. Moreover, if petitioner's manner of operating the farm continued during years subsequent to those at issue, it is highly doubtful whether the farm will ever become profitable. Petitioner had not expertise in operating a farm such as this one and there seems to be little likelihood that he will gain any. Accordingly, we conclude that petitioner's operation of the farm was an activity not engaged in for profit and that petitioner's deductions of the expenses incurred in connection therewith are subject to the limitations of section 183. [7]
Real Property Sale
Petitioner sold real property in 1974 for $ 15,000, incurring $ 1,565.50 in closing costs. Petitioner had purchased the property in 1968 for $ 5,000. The only issue *713 to be decided in determining the amount of gain realized as a result of this sale is whether petitioner had a basis in the property greater than the $ 5,000 he paid for the property. There is no issue as to the amount, or proper tax treatment, of the closing costs incurred by petitioner in the sale. At trial petitioner testified that he expended $ 237.50 for a storm sewer and $ 3,000 for fill dirt and the rental of a dragline to spread the fill dirt for the property in question. Although expenditures such as these could properly be added to basis, sec. 1.1016-2, Income Tax Regs., the only evidence as to the two amounts was petitioner's testimony. This testimony was too imprecise and uncertain to sustain his burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure, Welch v. Helvering,290 U.S. 111 (1933). Petitioner had no independent recollection of the $ 237.50 expense and while testifying he referred to a slip of paper upon which the figure was written. Petitioner could not identify the source of this paper and it was held to be inadmissible. As to the $ 3,000 figure, petitioner admitted it was an estimate. Petitioner's *714 general testimony as to the amounts of the expenditures is not sufficient evidence. There is no evidence of when the expenditure was made or why it was made. It is also quite possible that either or both of the expenditures in question may have been claimed as deductible expenses when, and if, made. We accordingly sustain respondent's determination as to petitioner's basis in, and the amount of gain realized from, the sale of the real property in 1974. Investment Credit
In 1975 petitioner purchased a mobile home park.Included in the purchase were a number of mobile homes located on the park property, which houses were subsequently rented to individuals recruited by petitioner to work as members of crews he formed to harvest fruit. The individuals remained in the mobile homes for varying lengths of time, some stayed for 1 or 2 weeks and some for 2 or 3 months. Petitioner claims, based on these facts, that he is entitled to an investment credit for the mobile homes for 1975. The only vidence as to the facts involved was the general testimony of petitioner. Section 38(a) provides for a credit against tax in an amount determined pursuant to sections 46 through 50. Section *715 46(c) generally provides that the allowable credit shall be a percentage of the qualified investment in "section 38 property." The definition of "section 38 property" is provided in section 48(a): (1) In general.--Except as provided in this subsection, the term "section 38 property" means-- (A) tangible personal property, or (B) other tangible property (not including a building and its structural components) but only if such property-- (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or (ii) constitutes a research facility used in connection with any of the activities referred to in clause (i), or (iii) constitutes a facility used in connection with any of the activities referred to in clause (i) for the bulk storage of fungible commodities (including commodities in a liquid or gaseous state, * * * Section 48(a)(3) further provides in defining section 38 property: (3) Property used for lodging.--Property which is used predominantly to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 *716 property. The preceding sentence shall not apply to-- (A) nonlodging commercial facilities which are available to persons not using the lodging facilities on the same basis as they are available to persons using the lodging facilities, (B) property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominate portion of the accommodations is used by transients, * * * Applying the foregoing provisions to the evidence presented, petitioner has failed to clear the hurdle of section 48(a)(3) in characterizing the mobile homes as section 38 property and, thus, eligible for investment credit.Excluded by the first sentence of section 48(a)(3) from the definition of section 38 property is property "used predominantly to furnish lodging or in connection with the furnishing of lodging." This language applies to petitioner's mobile homes and he does not argue otherwise. He does argue, however, that the exception provided in section 48(a)(3)(B) for "lodging where the predominant portion of the accommodations is used by transients" also applies, thereby rendering inapplicable the first sentence of section 48(a)(3). Section 1.48-1(h)(2)(ii), Income Tax Regs. *717 , provides in connection with section 48(a)(3)(B): Property used by a hotel, motel, inn, or other similar establishment, in connection with the trade or business of furnishing lodging shall not be considered as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging, provided that the predominant portion of the living accommodations in the hotel, motel, etc., is used by transients during the taxable year. For purposes of the preceding sentence, the term "predominant portion" means "more than onehalf." Thus, if more than one-half of the living quarters of a hotel, motel, inn, or other similar establishment is used during the taxable year to accommodate tenants on a transient basis, none of the property used by such hotel, motel, etc., in the trade or business of furnishing lodging shall be considered as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging. Accommodations shall be considered used on a transient basis if the rental period is normally less than 30 days.
The regulation was upheld in Moore v. Commissioner,58 T.C. 1045, 1053-1054 (1972), *718 affd. per curiam 489 F.2d 285 (5th Cir. 1973). Without addressing the question whether the mobile homes were used by a "hotel, motel, inn or other similar establishment," it is clear that petitioner has not established that the "predominant portion" requirement of the regulations was satisfied. The only evidence as to the use of the mobile homes was petitioner's general testimony. From such testimony it cannot be determined whether "more than one-half" of the mobile homes were used by "transients," as those terms are defined in section 1.48-1(h)(2)(ii), Income Tax Regs. All we know is that the mobile homes were used for varying lengths of time, some for 1 or 2 weeks and some for 2 or 3 months. Whether "more than one-half" were normally used for less than 30 days is unknown. Given the absence of evidence to the contrary, it would be reasonable to suspect that some tenants working on petitioner's crews stayed in the mobile homes for the duration of the 5- or 6-month fruit-harvesting season. By failing to establish that section 48(a)(3)(B) applies, the first sentence of section 48(a)(3) precludes the allowance of any investment credit for the *719 mobile homes purchased by petitioner. [8]
Additions to Tax
The final issues for decision are whether petitioner is liable for the section 6651(a)(1) additions to tax for each of the years involved and the section 6653(a) addition to tax for 1975 which were determined by respondent. Section 6651(a)(1) [9] generally provides for the imposition of an addition to tax if a taxpayer fails to file a return on or before the due date unless such failure is "due to reasonable cause and not due to willful neglect." The returns for each of the taxable years in issue, which returns would normally be due *720 on or before April 15 following the close of the taxable year, were filed on the following dates: Date return
Year
filed
1973
July 19, 1976
1974
July 19, 1976
1975
July 19, 1976
1976
July 7, 1977
*721 "Reasonable cause" for purposes of section 6651(a)(1) is defined as encompassing those circumstances where a taxpayer is unable to file a return when due, notwithstanding the exercise of ordinary business care and prudence. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; Inter-American Life Insurance Co. v. Commissioner, 56 T.C. 497, 511 (1971), affd. per curiam 469 F.2d 697 (9th Cir. 1972). Petitioner bears the burden of establishing reasonable cause, and thus showing respondent's determination to be erroneous. Bebb v. Commissioner, 36 T.C. 170, 173 (1961). Citing his lack of formal education, petitioner generally asserts that the necessary reasonable cause existed for the untimely filing of his returns because he relied on a tax-return preparer to prepare and file the returns. Seemingly, petitioner claims that for 1973, 1974, and 1975, he signed documents prepared by the tax-return preparer at a time when they could have been timely filed, [10] which documents he believed to be complete returns and which he believed the return preparer would mail.Petitioner further claims that it was not until 1976 that he learned that returns had *722 not been filed. As for his 1976 income tax return, petitioner also claims the failure to file timely returns was due to his reliance on the return preparer. Again the only evidence we have on the question of the untimely filing of the returns is the somewhat confusing testimony of petitioner. No documents other than the tax returns actually filed were introduced, nor was the tax-return preparer called as a witness. Petitioner's story that he signed documents which he believed to be complete income tax returns is implausible. Why would the tax-return preparer prepare documents which were not complete returns and have petitioner sign them? Furthermore, notwithstanding his lack of formal education, we believe that petitioner knew what a complete income tax return was and that he would not have signed a document believing it to be a complete return when it in fact was not. In summary, we do not believe petitioner's claim about the purported returns. Petitioner knew that returns were required and when they were due. Reliance on a tax-return preparer to prepare and file *723 the necessary returns under such circumstances is not reasonable cause for the untimely filing of those returns. Elliott v. Commissioner, 40 T.C. 304 (1963); Logan Lumber Co. v. Commissioner, 365 F. 2d 846 (5th Cir. 1966), affg. a Memorandum Opinion of this Court; Estate of Duttenhofer v. Commissioner, 49 T.C. 200 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969); Estate of Mayer v. Commissioner, 43 T.C. 403 (1964), affd. per curiam 351 F.2d 617 (2d Cir. 1965). Cf. Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d 769 (2d Cir. 1950), revg. 12 T.C. 735 (1949). The only concrete facts in evidence are the dates on which the returns were filed for the years in issue. On the basis of the record before us, we cannot conclude that reasonable cause existed for the untimely filing of petitioner's returns. Accordingly, the imposition of the section 6651(a)(1) additions to tax is sustained for the years in issue. Section 6653(a) [11] provides for the imposition of an addition to tax if any part of any underpayment of tax is due to "negligence or intentional *724 disregard of rules and regulations." Respondent determined such an addition for petitioner's taxable year 1975 due to an understatement of gross receipts in the amount of $ 24,149.62. Petitioner bears the burden of showing that respondent's determination was erroneous. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Apparently, petitioner's gross receipts were determined by analyzing checks deposited to petitioner's bank account and the understatement of gross receipts was due to the failure of petitioner to deposit in the account all checks which were includable in gross receipts. Given the amount of the understatement and the limited facts presented, we cannot conclude *725 that petitioner has satisfied his burden. Accordingly, we sustain the imposition of the section 6653(a) addition to tax. Because of concessions by both parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved.↩
2. The timber located on the farm may have been too immature to harvest during any of the years in issue.↩
3. There is no issue properly before us as to whether the expenditures were in fact made. The parties tried the case on the basis that the expenditures were made and we will proceed on the same basis.↩
4. other than generally listing these items in the above table, evidence was not introduced as to the specific nature of the amounts expended.↩
5. Whether petitioner is entitled to an investment credit for the mobile homes is a legal question and the parties have agreed to the amount of the credit in the event the Court determines it is authorized.↩
6. Also provided in sec. 183 are a presumption (sec. 183 (d)) and election (sec. 183(e)↩) which can affect the determination of whether an activity is not engaged in for profit. Neither of these subsections is applicable herein.
7. Having decided this issue on sec. 183↩ grounds, we need not consider the possible application of secs. 182 and 263 to the facts presented.
8. Having decided this issue on the grounds set forth, we need not address respondent's additional argument that petitioner has failed to prove that the mobile homes were tangible personal property rather than "inherently permanent structure[s]." Sec. 1.48-1(c), Income Tax Regs. See and compare Moore v. Commissioner, 58 T.C. 1045 (1972), affd. per curiam 489 F.2d 285 (5th Cir. 1973). If the mobile homes were inherently permanent structures, they would be excluded from the definition of sec. 38 property by sec. 48(a)(1)(B)↩.
9. Sec. 6651(a)(1) provides: (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
10. Petitioner testified on cross-examination that he executed the 1973 return on or about July 4, 1974.↩
11. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩