JOSEPH HENRY MOORE AND MARY OPHELIA DUNN MOORE, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4851–69. Filed September 28, 1972.

*Flavous L. Hutchinson,* for the petitioners.
*John B. Harper,* for the respondent.

HOYT, *Judge:* The respondent determined deficiencies in the petitioners' income tax and additions to the tax under section 6653(a) of the 1954 Code for the calendar years and in the amounts listed below:

| Year | Deficiency | Additions to tax sec. 6653(a) |
|---|---|---|
| 1965 | $3,689.19 | $184.46 |
| 1966 | 3,805.89 | 190.29 |

The issues presented for our decision are (1) whether mobile homes purchased in the years 1965 and 1966 qualify as "section 38 property," thereby entitling the petitioners to the credit against the tax allowed by section 38 [1] of the 1954 Code, and (2) whether the said mobile homes qualify as "section 179 property," thereby entitling the petitioners to additional first-year depreciation allowed under section 179 of the 1954 Code.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits thereto are incorporated herein by this reference.

The petitioners, Joseph Henry Moore and Mary Ophelia Moore, are husband and wife. On the date the petition was filed in this case, they resided in Tupelo, Miss. They filed their joint Federal income tax returns for the years 1965 and 1966 with the director, Internal Revenue Service Center, Chamblee, Ga.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] The respondent has conceded that no part of the underpayment of tax for the taxable year 1965 was due to fraud or intentional disregard of rules and regulations. The petitioners have conceded that part of the underpayment of tax for the year 1966 was due to negligence. The parties have also stipulated with respect to other adjustments determined by the statutory, notice, and all such situations will be given effect in the Rule 50 computation.

Prior to March 1, 1965, the petitioner Joseph Henry Moore and one Jimmy Evans were partners in a partnership known as Tupelo Trailer Court, whose business was the renting of mobile homes.[3] The mobile homes were located in a 4- or 5-acre mobile home park on South Gloster Street in Tupelo, Miss.

On March 1, 1965, Joseph (hereinafter sometimes referred to as the petitioner-husband) purchased the interest of Jimmy Evans in the partnership and thereafter continued to operate the business as a proprietorship at the same location [4] under the name of Tupelo Trailer Rentals. At the time of the purchase of Evans' interest, petitioner-husband acquired 16 mobile homes, at a cost of $24,504.06.[5]

During the years in question, the number of additional mobile homes purchased by the petitioner-husband for use in Tupelo Trailer Rentals and the cost thereof were as follows:

| Date Purchased | Quantity | Cost |
|---|---|---|
| 3/1/65–12/14/65 | 15 | $30, 718. 00 |
| 1/27/66–9/1/66 | 10 | 35, 903. 18 |

These mobile homes are depreciable property, and have an estimated useful life of 10 years, which respondent has not challenged.

All of the mobile homes used in the operation of Tupelo Trailer Rentals were located in the same mobile home park. Following the purchase of the mobile homes, they were brought to the park where they were placed on concrete blocks. The wheels of the trailers were left intact after the trailers were placed upon these blocks.

The concrete blocks were used to support and level the trailers. The blocks had no mortar between them, nor were they set in concrete. They could be pushed out from under the trailers in order to facilitate moving the trailers on their self-contained wheels to different locations within the park. Many of the mobile homes were moved

---

[3] The terms "mobile home" and "trailer" are used interchangeably herein. In Webster's New Collegiate Dictionary (G. & C. Merriam Co. 1961), a trailer is defined as follows: "2. A highway vehicle designed to be hauled, esp. by an automotive vehicle, as a truck trailer or a semitrailer; specif., one equipped for use as a dwelling, to be drawn by a passenger automobile."

[4] Gloster Street is also known as U.S. Highway 45. Most of Tupelo's major motels are located on Gloster Street. Tupelo Trailer Rentals is the only trailer court. It is located in Tupelo's main business section, within 2 or 3 blocks of a medical center and hospital.

[5] This amount is stipulated to be the petitioner-husband's basis in the 16 trailers acquired from Evans.

The respondent, in the section of his reply brief entitled "Respondent's Objections to Petitioners' Requested Findings of Fact", states that "the petitioners' claims for bonus depreciation and the investment credit do not relate to the group of 16 mobile homes costing $24,504.06." Our examination of the pleadings and other materials filed in this case indicates that the petitioners' claims *do* relate to this group of trailers. The respondent makes no suggestion that these trailers should be disqualified from the benefits of secs. 38 and 179 for reasons other than those stated in the argument portions of his briefs, nor does he advance any reason why the conclusions reached herein should not apply to this group of trailers.

around the park from time to time by being hooked on to a truck. No damage was caused to the trailers, the furnishings, or the lot sites as a result of these moves. Despite these relocations, the mobile homes remained on the business site of Tupelo Trailer Rentals during the entire period they were used in the operations of the business.

All of the trailers were assessed and taxed as personal property under the laws of the State of Mississippi.

During the years in question, Tupelo Trailer Rentals maintained an office at the site of the business. The office was operated by Mary during the daytime, but it was closed at night.

There were no telephones provided by Tupelo Trailer Rentals in any of the mobile homes. Any tenant who wanted a telephone was required to have it installed himself. A pay telephone located outside the office door was at all times available for the tenants' use.

Tenants who used gas for heating or cooking were required to purchase bottled gas at their own expense. Other utilities were provided by Tupelo Trailer Rentals and the cost thereof was included in the rents.

The petitioner-husband did not provide any maid or linen service to tenants of the mobile homes. However, he employed a handyman to assist the tenants by performing minor repairs and other odd jobs.

Tupelo Trailer Rentals did not advertise and did not maintain a restaurant. There was a restaurant located in a motel across the street from the business site.

During the years in question, rents were collected from the tenants of the mobile homes in advance on a weekly or monthly basis. Approximately 90 percent of the tenants paid their rent on a weekly basis (even though they may have stayed for a longer period), and approximately 10 percent of the tenants paid their rent on a monthly basis.

Many of the people who stayed at Tupelo Trailer Rentals were in town on business; others had relatives who were in the hospital or who were patients at the medical center. Tupelo Trailer Rentals did not rent mobile homes on a daily or overnight basis. The tenants of the mobile homes paid no sales tax or any other tax on the rents which they paid.

If the petitioner-husband found that a certain tenant was undesirable, he would evict him. If the eviction occurred prior to the end of the period for which the rent had been paid, the unused portion of the rent would be refunded to the tenant. If the tenant decided for personal reasons to leave before the end of such period, the unused portion of the rent would not be returned unless the petitioner-husband rented the mobile home to another tenant before the end of the period.

The chart below sets forth the number of tenants staying in the

mobile homes used by Tupelo Trailer Rentals for periods of less than 30 days; the number staying for periods of 30 days or more; total time of occupancy (in weeks) of all tenants staying less than 30 days; and total time of occupancy (in weeks) of all tenants staying 30 days or more. The schedule covers the period from November 12, 1965, to October 28, 1966; however, the information contained in the schedule is representative of the number and length of tenancies for both of the taxable years in question.

| Mobile home number | Number of tenants staying less than 30 days | Number of tenants staying 30 days or more | Total weeks of occupancy of all non-30-day tenants | Total weeks of occupancy of all 30-day tenants |
|---|---|---|---|---|
| 1 | 1 | 1 | 1½ | 22 |
| 2 | 10 | 4 | 23½ | 21 |
| 3 | 9 | 3 | 15 | 27 |
| 4 | 0 | 1 | 0 | 44 |
| 5 | 0 | 1 | 0 | 40 |
| 6 | 2 | 2 | 3 | 29 |
| 7 | 6(1) | 4 | 15 | 28½ |
| 8 | 1 | 1 | 2 | 7 |
| 9A | 10 | 2 | 10 | 14 |
| 10 | 2(3) | 4 | 3 | 25½ |
| 11 | 3 | 5 | 3½ | 38 |
| 13 | 0 | 1 | 0 | 15 |
| 14 | 1 | 1 | 1 | 12 |
| 15 | 2 | 0 | 5 | 0 |
| 16 | 0 | 1 | 0 | 4 |
| 18 | 1 | 0 | 3 | 0 |
| 19 | 5 | 1 | 10 | 7 |
| 20 | 0 | 2 | 0 | 12 |
| 21 | 2 | 0 | 5 | 0 |
| 22 | 1 | 1 | 3 | 6 |
| 23 | 3 | 0 | 5 | 0 |
| 24 | 2 | 0 | 2 | 0 |
| 25 | 0 | 1 | 0 | 4 |
| 26 | 6 | 1 | 7 | 10 |
| 27 | 7(1) | 2 | 8 | 26 |
| 28 | 1 | 3 | 3 | 19 |
| 29 | 3(1) | 2 | 7 | 20 |
| 30 | 6 | 3 | 7 | 24 |
| 31 | 3(3) | 4  1* | 5 | 26 |
| 32 | 4 | 2  1* | 10 | 24 |
| 33 | 3 | 2 | 6 | 34½ |
| 34 | 4 | 0 | 6 | 0 |
| 35 | 13(2) | 2 | 22 | 9 |
| 36 | 4(2) | 1  1* | 8 | 21 |
| 37 | 1(2) | 4  1* | 1 | 38 |
| 38 | 2 | 2  1* | 2 | 28 |
| 39 | 13 | 3  1* | 17 | 26 |
| 40 | 0 | 1 | 0 | 36 |
| 41 | 5 | 2 | 14 | 14 |
| 42 | 5(1) | 2  2* | 5 | 23 |
| 43 | 11 | 2 | 21 | 13 |
| 44 | 4 | 3 | 4 | 33 |
| 45 | 6 | 1  1* | 12 | 6 |
| 48 | 0 | 1 | 0 | 5 |
| 9B | 4 | 2 | 9 | 14 |
| Totals | 166(16) | 81  9* | 284½ | 805½ |

( ) Numerals in parenthesis indicate the number of tenants who stayed less than 30 days in the particular mobile home designated, but 30 days or more in Tupelo Trailer Rentals.
*Numerals with asterisks indicate the number of tenants who stayed 30 days or more in the particular mobile home designated, but who also stayed 30 days or more in other mobile homes in Tupelo Trailer Rentals.

Three-fourths of the mobile homes in Tupelo Trailer Rentals were rented more than half the time (excluding periods of vacancy) by tenants who rented a trailer for longer than 30 days. A tenant staying longer than 30 days in a particular mobile home rented the home for

an average of 9.9 weeks (805.5÷81). A tenant staying less than 30 days in a particular mobile home rented the home for an average of 1.7 weeks (284.5÷166). During 1965 and 1966, more than 50 percent of the tenants stayed for a period of less than 30 days. Tupelo Trailer Rentals required most tenants (approximately 90 percent) to make rent payments every week, regardless of the length of their stay.

On their Federal income tax returns for each of the years 1965 and 1966, the petitioners deducted $4,000 for bonus or additional first-year depreciation on the mobile homes purchased in each year between the dates of March 1, 1965, and September 1, 1966. In his statutory notice of deficiency, dated June 27, 1969, the respondent stated: "Depreciation shown on your 1965 and 1966 returns is disallowed to the extent that you claimed first-year depreciation on buildings used for housing purposes."

On their Federal income tax returns for the years 1965 and 1966, the petitioners claimed credits against tax (investment credits) in the respective amounts of $2,005.15 and $1,293.30. In his statutory notice of deficiency, dated June 27, 1969, the respondent stated: "It is determined that the allowable investment credit for 1965 and 1966 is in the respective amounts of $133.41 and $115.48 * * *. Investment credit claimed by you on trailers converted to regular dwellings is not allowable."

OPINION

The first issue for our decision is whether the mobile homes purchased in the taxable years 1965 and 1966 qualify as "section 38 property," thereby entitling the petitioners to the credit against the tax allowed by section 38 of the 1954 Code.[6] "Section 38 property" is defined in section 48 of the 1954 Code. Section 48(a)(1) provides:

Except as provided in this subsection, the term "section 38 property" means—
(A) tangible personal property * * *.

However, under section 48(a)(3), even tangible personal property will not qualify as "section 38 property" if it is "used predominantly to furnish lodging or in connection with the furnishing of lodging." An exception to this latter rule is found in section 48(a)(3)(B), which provides that "property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients" will not be subject to the restriction contained in section 48(a)(3).

---

[6] SEC. 38. INVESTMENT IN CERTAIN DEPRECIABLE PROPERTY.
(a) GENERAL RULE.—There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part.
(b) REGULATIONS.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B.

It is clear, therefore, that in order for the mobile homes in question to qualify as "section 38 property," they must first fall into the tangible personal property category (sec. 48(a)(1)). Then, it must appear that they are not "used predominantly to furnish lodging" (sec. 48(a)(3)), or, if they are, that they are "used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients" (sec. 48 (a)(3)(B)).

The respondent first argues that the mobile homes are not tangible personal property because they are buildings used as rental dwellings. He relies heavily on the regulations governing investment credit matters. The respondent has been given broad authority under section 38(b) to carry out the purpose of the investment credit provisions by promulgating necessary regulations. These regulations are therefore entitled to great weight in interpreting the statutory definition of "section 38 property."

The regulations contain the following definitions relative to the term "tangible personal property":

Local law shall not be controlling for purposes of determining whether property is or is not "tangible" or "personal." Thus, the fact that under local law property is held to be personal property or tangible property shall not be controlling. Conversely, property may be personal property for purposes of the investment credit even though under local law the property is considered to be a fixture and therefore real property. For purposes of this section, the term "tangible personal property" means any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures). Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are not tangible personal property. * * * [Sec. 1.48–1(c), Income Tax Regs.]

\*      \*      \*      \*      \*      \*      \*

Buildings and structural components thereof do not qualify as section 38 property. The term "building" generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide working, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office buildings, warehouses, barns, garages, railway or bus stations, and stores. * * * [Sec. 1.48–1(e), Income Tax Regs.]

We are unable to agree with the respondent that the trailers in question here fall within the definition of buildings, contained in the above-quoted provisions.

It is true, as the respondent points out, that a trailer has certain attributes which the regulations regard as "generally" characteristic of a building (such as four walls and a roof and an ability to be used for shelter and housing), but these general characteristics are not unique to buildings, and the presence of these attributes does not

require us to conclude that the trailers at issue fall within that forbidden category.

The regulations state that "the term 'tangible personal property' means any tangible property except land and improvements thereto" (sec. 1.48–1(c)). Clearly a mobile home is tangible property, and clearly it is not land. Furthermore, since the mobile homes in the case at bar were never affixed to the land and remained at all times movable, they cannot be considered as improvements to land.

The regulations cite "buildings or *other* inherently permanent structures" [7] as examples of improvements to land, indicating that in order to fit the definition of a building, an item of property must be an inherently permanent structure on the land. Cf. *Estate of Shirley Morgan*, 52 T.C. 478, 482–484 (1969), affirmed per curiam 448 F. 2d 1397 (C.A. 9, 1971). It is apparent the trailers in the instant case do not fit this description. Although utility connections were made to the mobile homes, they were merely set on piers of unconnected concrete blocks and remained fully capable of being moved on and off the business site on their own wheels. Many of the mobile homes were in fact relocated within the park from time to time by being hooked on to a truck. While we recognize that in some mobile home or trailer parks the trailers are affixed to the land, we are unable to adopt the respondent's position that the mobile homes at issue were permanent improvements to the land at the Tupelo Trailer Court during the years before us.

The respondent urges that since the trailers were *used* to provide shelter or housing, they are, by virtue of their "functional use," no different from a building. Applying this "functional use" test, the respondent concludes that the trailers should not be treated as tangible personal property for purposes of the investment credit.

The "functional use" test of the regulations (sec. 1.48–1(e)) has been applied by this Court in a differing factual context. See *Robert E. Catron*, 50 T.C. 306, 311 (1968), and *Central Citrus Co.*, 58 T.C. 365 (1972). But we have never held, and the regulations do not suggest, that "functional use" is the sole criterion by which an item's status as a building is to be determined. Even the respondent admits that if a trailer is towed from place to place, it would "probably" be personal property. Obviously, in that instance the trailer would also be used for shelter and housing and would serve the function of a building. If "functional use" were the sole standard by which to judge whether a trailer is a building, it should logically be of no importance whether

---

[7] Emphasis to the word "other" has been added by the Court. This language in the regulations follows closely the language of the congressional committee reports that accompanied the initial enactment of the investment credit provisions. See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), and S. Rept. No. 1881, 87th Cong., 2d Sess. (1962).

it is towed from town to town or towed from place to place in a trailer park. It is apparent that before the "functional use" test can properly be applied in this case, it must first be shown that the trailers were permanent improvements to land. As we indicated above, this requirement is fully consistent with the respondent's own regulations and with congressional intent.

Since the mobile homes at issue clearly were not "inherently permanent structures" on the land, we hold, in accordance with the foregoing discussion, that they were tangible personal property for purposes of section 48(a)(1).

The petitioners do not dispute the fact that the trailers are "used predominantly to furnish lodging" (sec. 48(a)(3)) and will not qualify as "section 38 property" unless they fall within the ambit of section 48(a)(3)(B). This latter section, quoted above, requires the petitioners to establish that (1) the trailers are used by a hotel or motel, (2) the trailers are used in connection with the business of furnishing lodging, and (3) the predominant portion of the accommodations is used by transients. In this connection, section 1.48-1(h)(2)(ii), Income Tax Regs., provides:

Property used by a hotel, motel, inn, or other similar establishment, in connection with the trade or business of furnishing lodging shall not be considered as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging, provided that the predominant portion of the living accommodations in the hotel, motel, etc., is used by transients during the taxable year. For purposes of the preceding sentence, the term "predominant portion" means "more than one-half." Thus, if more than one-half of the living quarters of a hotel, motel, inn, or other similar establishment is used during the taxable year to accommodate tenants on a transient basis, none of the property used by such hotel, motel, etc., in the trade or business of furnishing lodging shall be considered as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging. Accommodations shall be considered used on a transient basis if the rental period is normally less than 30 days.

We do not deem it necessary to decide here whether the mobile homes at issue were used by a "hotel, motel, inn, or other similar establishment," as those terms are used in the regulations, because it is quite apparent another requirement of the statute and regulations—that the "predominant portion of the accommodations" furnished by the petitioners be "used by transients"—has not been satisfied.

The regulations define "predominant" to mean "more than half." The regulations also state that "accommodations shall be considered used on a transient basis if the rental period is normally less than 30 days." These provisions in the regulations are consistent with the language of the committee reports that accompanied the initial enactment of the investment credit sections of the Code. See H. Rept. No.

1447, 87th Cong., 2d Sess., p. A21 (1962), and S. Rept. No. 1881, 87th Cong., 2d Sess., p. 157 (1962).[8]

An examination of the chart provided in our Findings of Fact shows that, during the periods when the petitioners' mobile homes were rented, 33 of the 45 trailers were used over 50 percent of the time by tenants who rented the trailers for periods of 30 days or more. Therefore, it cannot be said that "more than one half of the living quarters" was used during the years at issue "to accommodate tenants on a transient basis." It must follow that the trailers in question were "used predominantly to furnish lodging" and that, by virtue of section 48(a)(3), they do not qualify as "section 38 property."

The petitioners contend, however, that virtually all of their tenants were transients, and they base this argument on their view that the term "rental period" employed in the regulations refers to the actual period for which tenants pay rent (generally 1 week, in their case) and not to the entire period of occupancy, as the respondent suggests.

We believe that to state the petitioners' proposition is to refute it. For example, if all of the tenants of a hotel lived there indefinitely month after month but paid their rent once a week, then, under the petitioners' construction of the regulations, these tenants would be considered transients. This result would not be acceptable.

It is essential that the regulations establish a reasonable basis for distinguishing between hotels and motels which are largely residential and those which cater primarily to persons in travel status. Only if the regulations define the statutory term "used by transients" in terms of a *period of occupancy* of "normally less than 30 days" can it be said that they provide such a reasonable basis.

We hold that the petitioners are not entitled to the section 38 credit against the tax in connection with the mobile homes acquired by the petitioner-husband during 1965 and 1966.

The second issue for our decision is whether the trailers purchased in 1965 and 1966 qualify as "section 179 property," entitling the petitioners to additional first-year depreciation under section 179 of the 1954 Code.

Section 179(d)(1) provides that "For purposes of this section, the term 'section 179 property' means tangible personal property." The regulations elaborate on this definition:

Local law definitions will not be controlling for purposes of determining the meaning of the term "tangible personal property" as it is used in section 179 and the

---

[8] On brief, the petitioners argue, in effect that "predominant portion" is determined by looking to the number of guests falling into the transient category. We think it is quite clear from the regulations and the committee reports that we must ascertain the *proportion of accommodations* used by transients and *not* take a head count of the transients. See also *Klingle Corp.*, T.C. Memo. 1970–135.

regulations thereunder. For purposes of section 179, the term "tangible personal property" includes any tangible property except land, and improvements thereto, such as buildings or other inherently permanent structures thereon (including items which are structural components of such buildings or structures). * * * [Sec. 1.179–3(b), Income Tax Regs.]

This definition of tangible personal property is substantially identical to the definition provided in the regulations pertaining to "section 38 property." See *Estate of Shirley Morgan, supra* at 482. However, section 179 does not contain any exception for property "used predominantly to furnish lodging."

The respondent argues that the mobile homes at issue are not tangible personal property and therefore do not fit the definition of "section 179 property." We do not agree. For the reasons given above in connection with the discussion of the section 38 issues in this case, we hold that the mobile homes are tangible personal property and petitioners are therefore entitled to additional first-year depreciation under section 179.

In accordance with the foregoing opinion, and in view of concessions made by the parties,

*Decision will be entered under Rule 50.*