RONNIE R. ABBOTT and WILMA ABBOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abbott v. Commissioner
Docket No. 5200-80.
United States Tax Court
T.C. Memo 1981-424; 1981 Tax Ct. Memo LEXIS 317; 42 T.C.M. (CCH) 646; T.C.M. (RIA) 81424; August 12, 1981. *317 Held, petitioner was not "away from home" within the meaning of section 162(a)(2), I.R.C. 1954, and, therefore, expenses incurred for mileage, meals, and lodging with respect to his employment are nondeductible. Held further, petitioner is not entitled to a depreciation deduction or an investment tax credit with respect to a travel trailer he used for lodging. John D. Herbert, for the petitioners. Brad S. Ostroff, for the respondent. WILES
*319 MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 1,755 in petitioners' 1977 Federal income tax. After concessions, the remaining issues for decision are: (1) Whether traveling expenses incurred by petitioner Ronnie R. Abbott with respect to his employment are deductible under section 162(a)(2). [1]
(2) Whether petitioner Ronnie R. Abbott was entitled to a depreciation deduction and an investment tax credit with respect to a travel trailer he used for lodging. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Ronnie R. Abbott (hereinafter petitioner) and Wilma Abbott, husband and wife, resided in Chandler, Arizona, when they filed their petition in this case. They filed their 1977 Joint Federal income tax return with the Internal Revenue Service Center, Ogden, Utah. Petitioner is an electrician by trade and a member of the International Brotherhood of Electrical Workers, Local Union 460, in Midland, Texas. In 1971, petitioner and his family moved to Arizona because he could obtain employment there *320 and his wife wanted to live near her mother who had become ill. From 1971 until 1974, although petitioner did not join a local union, he obtained employment through the Phoenix, Arizona, Local Union 640 (hereinafter Local 640). On January 19, 1977, petitioner obtained employment through the Globe, Arizona, Local Union 518 (hereinafter Local 518), at the Cholla Power Plant project (hereinafter Cholla plant) in Joseph City, Arizona. The Cholla plant is owned by the Arizona Public Service Corporation (hereinafter APS) and was placed in service in 1962 with one generating unit (Unit 1). In 1973, APS planned on building three additional generating units (Units 2, 3, and 4) at the Cholla plant. Construction of Units 2, 3, and 4 commenced in 1973, 1976, and 1978, respectively, and on December 31, 1975, the scheduled completion dates for these units were 1978, 1979, and 1980, respectively. In 1976, APS planned a fifth generating unit (Unit 5) at the Cholla plant which would be operational in 1983. At all relevant times, construction at the Cholla plant was under the direction of the general contractor, Bechtel Power Corporation (hereinafter Bechtel). Since Bechtel needed many electricians *321 for the Cholla project, it entered into an agreement in 1973 with Local 518 concerning the construction on Units 2 and 3. In 1976, this agreement was renegotiated to include Unit 4. The agreement was common knowledge to the electricians working out of Local 518. Local 518 referred union members to jobs according to a book system. When petitioner first began work at the Cholla plant, he was placed in Book 2 by Local 518. The workers in Book 2 were second in job priority only to the workers placed in Book 1. Bechtel could not satisfy its increasing demand for electricians at the Cholla plant solely from Book 1 membership. Since Bechtel's agreement with Local 518 permitted Bechtel to dismiss any electricians regardless of their book classification, it was able to keep the most competent workers on the job. Bechtel made every effort not to lay off competent electricians because it desired to maintain continuity at the work site and it was more costly to terminate and rehire workers. Although winter weather conditions sometimes required a reduction in the number of work crews, the crews would be built back up as soon as the weather improved. Any employees who were laid off *322 by Bechtel had to get their next job assignment from Local 518. Since jobs might be available elsewhere, there was no assurance that such employees would be reassigned to the Cholla plant. From January 19, 1977 until October 24, 1980, the date petitioner quit his job, he was, with one exception, continuously employed at Cholla. [2] When petitioner began working at the Cholla polant he was aware that Units 2 and 3 were under construction and that there were plans to construct Units 4 and 5. From 1973 through the present time, construction on one or more units at Cholla has been continuous, and only a small number of electricians working there have been fired. In July 1977, it was probable that an able electrician beginning work at Cholla would remain employed for a few years. Throughout his employment at the Cholla plant, petitioner owned a residence in Chandler, Arizona, where his wife and two sons lived. From January until July 1977, petitioner lived in a motel in Holbrook, *323 Arizona, during the work week. Holbrook was 10 miles from the jobsite and 186 miles from Chandler. During the remaining part of 1977, petitioner lived in the Holbrook area in a travel trailer which he purchased for $ 4,800. On weekends, petitioner traveled to his Chandler residence to be with his family. Petitioner's wife lived in Chandler in order to be near her ill mother, and his two sons, who were 20 and 21 years of age in 1977, lived there for financial reasons. Consequently, petitioner concluded that it would be unreasonable to relocate and move his family into one of the towns within the vicinity of his jobsite at the Cholla plant. On his 1977 Federal income tax return petitioner claimed a depreciation deduction with regard to his travel trailer of $ 450 and an investment tax credit on the trailer in the same amount, and a travel deduction (including meals and lodging) of $ 4,311. In the notice of deficiency, respondent disallowed the deductions and the investment tax credit. OPINION Issue 1: Travel Expense Deduction
The first issue for decision is whether expenses for lodging, meals, and mileage were incurred by petitioner while he was "away from home" within *324 the meaning of section 162(a)(2). Petitioner argues that his home for tax purposes was his Chandler residence and therefore he was "away from home" during his employment in Joseph City at the Cholla plant. Respondent contends that petitioner's tax home was Joseph City and disallowed the deductions petitioner claimed with respect to such employment. As a general rule, deductions for personal living expenses are disallowed under section 262. Section 62(a)(2), however, allows a taxpayer to deduct traveling expenses if he can establish that they were: (1) ordinary and necessary; (2) incurred while "away from home"; (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); Verner v. Commissioner, 39 T.C. 749, 753 (1963). This Court has held that a taxpayer's "home" for purposes of section 162 is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). There is, however, an exception to this rule when a taxpayer *325 with a well established tax home accepts temporary employment elsewhere. In this context, temporary employment means "the sort of employment in which termination within a short period could be foreseen." Albert v. Commissioner, 13 T.C. 129, 131 (1949). See also Norwood v. Commissioner, 66 T.C. 467, 470 (1976); McCallister v. Commissioner, 70 T.C. 505, 509 (1978); Kroll v. Commissioner, supra at 562. The reason for not shifting the taxpayer's "tax home" to his temporary place of employment is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, supra at 562. On the other hand, whenever termination of employment cannot be foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment and he does not satisfy the "away from home" requirement. Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971). Furthermore, if *326 employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, "the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner, supra at 562. See also McCallister v. Commissioner, supra at 509. Bark v. Commissioner, 6 T.C. 851, 854 (1946). Employment may change from temporary to indefinite "due to changed circumstances, or simply by the passage of time." Norwood v. Commissioner, supra at 470. Each case in this heavily litigated area turns on its own facts. Commissioner v. Peurifoy, 254 F. 2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59, 61 (1958); Norwood v. Commissioner, supra at 469-470. The Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, has applied a somewhat different test than this Court to determine whether a taxpayer's tax home has shifted to his present place of employment. In Harvey v. Commissioner, 283 F. 2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Ninth Circuit *327 stated its test as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. * * * See also Wright v. Hartsell, 305 F. 2d 221, 224 n. 1 (9th Cir. 1962). On this record, applying either the test of this court or the Ninth Circuit, we hold that petitioner was not "away from home" within the meaning of section 162(a)(2). We are convinced that petitioner had a reasonable probability known to him that he would be employed for a long period of time at the Cholla plant. When petitioner began working there he knew that APS planned on constructing Units 2, 3, 4, and 5. Although petitioner testified that he never considered how long it would take to build these new units, he did state that he believed work would be available if sufficient supplies were furnished to the workers. Given the fact that since 1973, construction on one or more new units has been continuous, the petitioner had no reason to expect, nor did he present any evidence of, material *328 or other supply shortages which might cause significant breaks in the construction schedule. In addition, there was no evidence presented that information regarding the scheduled completion dates of 1978, 1979, and 1980 for Units 2, 3, and 4, respectively, was withheld from the employees. Compare with Harvey v. Commissioner, supra.Furthermore, the petitioner was never laid off in 1977, and had no reason to expect to be laid off in 1977. Nevertheless, petitioner argues that his employment should be considered to be temporary because of his ownership of a residence in Chandler, his family's need to live in such residence, his inability to find suitable living facilities in the Joseph City area, his risk of being laid off from work, and the unknown duration of the shortage of work in the Chandler area.We must reject petitioner's argument for the following reasons. First, the fact that petitioner owns a residence in Chandler and that his wife and two sons had personal reasons for living there has no relevance in this case. The focus of both this Court's and the Ninth Circuit's test is on the petitioner's view, in light of all the objective facts, as to the *329 duration of his employment. Even though the petitioner had a family and a residence in Chandler, his employment at the Cholla plant from January 19, 1977 [3] through October 24, 1980, shows that he was able to accept lengthy employment outside of the Chandler area. Second, although petitioner argues that he was unable to find "suitable living facilities in the Joseph City area," he testified that he only looked for housing in Holbrook. Petitioner gave no testimony as to what, if any, efforts he made to obtain housing in Joseph City or any other cities that might offer suitable housing near the Cholla jobsite. Third, the fact that a taxpayer is employed in an industry where workers are occasionally laid off does not automatically mean all such employment may be labeled temporary. Petitioner has not come forward with sufficient evidence that there was a real likelihood he would be laid off by management. Finally, petitioner's claimed lack of knowledge regarding the duration of work in the Chandler area does not establish that petitioner expected employment opportunities to become available there shortly; if anything it shows his employment at the Cholla plant would be for an indefinite *330 period of time. For the foregoing reasons, we conclude that petitioner's tax home during 1977 was in the vicinity of Joseph City, Arizona, and that his expenses for lodging, meals, and mileage while working at the Cholla plant are not deductible as "away from home" travel expenses. Issue 2: Depreciation Deduction and Investment Tax Credit
On his 1977 return, petitioner claimed a depreciation deduction of $ 450, as well as an investment tax credit in the same amount, both in regard to the travel trailer he purchased for living purposes while working at the Cholla plant. Since we have held petitioner was not "away from home" during such employment, section 262 operates to disallow the depreciation deduction as the travel trailer purchase was a personal living expense and was not property described in section 167(a). In addition, the investment tax credit must be disallowed because it is not "property with respect to which depreciation * * * is allowable." Section 48(a)(1). Furthermore, even if the travel trailer was depreciable property no investment tax credit may be taken because *331 it was "used predominately to furnish lodging or in connection with the furnishing of lodging." Section 48(a)(3). See generally, sec. 1.48-1(h)(1), Income Tax Regs., and Moore v. Commissioner, 58 T.C. 1045 (1972), affd. 489 F. 2d 285 (5th Cir. 1973). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The one exception was for two days during the week of March 19, 1979. At the time, petitioner and some other employees were discharged. The following week, however, they were all reinstated.↩
3. Petitioner presented no evidence as to where he was employed during 1974, 1975, and 1976.↩