ROBERT J. KOERNER AND BARBARA S. KOERNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Koerner v. Commissioner
Docket No. 30163-81.
United States Tax Court
T.C. Memo 1983-588; 1983 Tax Ct. Memo LEXIS 184; 46 T.C.M. (CCH) 1488; T.C.M. (RIA) 83588; September 26, 1983. Robert J. Koerner, pro se. Patrick E. McGinnis, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies of $3,625 and $3,588 in petitioners' Federal income tax for the taxable years 1978 and 1979, respectively. The issues for decision are: 1. Whether petitioners are entitled to an investment tax credit for their purchase of certain mobile homes under section 38 [1] and, if so, the amount of their qualified investment in the mobile homes; 2. Whether petitioners are entitled to a home office deduction under section 280A for the alleged business use of one of the bedrooms in their personal residence; and 3. Whether petitioners have substantiated *186 claimed local mileage expenses and/or claimed gas-lube-oil and depreciation expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Robert J. Koerner and Barbara S. Koerner, husband and wife, resided in Newton, Kansas, at the time they filed their petition in this case. They filed joint Federal income tax returns for the taxable years 1978 and 1979. Petitioner Robert J. Koerner worked for the State of Kansas, and petitioner Barbara S. Koerner worked for a savings and loan association both years. Petitioners claimed an investment tax credit in the amount of $3,533.24 on their 1978 tax return with respect to 17 mobile homes purchased by them that year. Petitioners also owned rental properties other than the mobile home property, discussed below. Sixteen of the mobile homes and the realty on which they were located were purchased from Arlen D. and Geraldine K. Anderson pursuant *187 to a written agreement to sell, the closing date of which was January 2, 1978. The realty was commonly known as "Sky-Vue Mobile Home Court," and was located at 901 East 12th, Newton, Kansas. Of the total purchase price of $118,000, the agreement specifically allocated $68,000 to the 16 mobile homes and $50,000 to the land. Petitioners purchased the 17th mobile home from Debra D. Bradshaw pursuant to a written contract to sell dated March 23, 1978. The purchase price of this mobile home was $4,600. Thus, petitioners paid a total of $72,600 for the 17 mobile homes purchased in 1978. [2]
The mobile home purchased from Debra D. Bradshaw was moved to the Sky-Vue Mobile Home Court in May 1978. The 16 mobile homes purchased along with the Sky-Vue Mobile Home Court were not relocated by petitioners. Petitioners rented the mobile homes to various tenants during 1978 and 1979. The mobile homes were rented pursuant to oral contracts. The normal rental term during 1978 and 1979 was on a month-to-month *188 basis. Tenants were not required to pre-pay any rent for these periods, but a $50 deposit for damages was required. The stated rental included the cost of utilities in some instances. Free maid or linen service was not provided. Although the mobile homes were rented on a monthly basis, many of the tenants remained in a particular mobile home for periods well in excess of one month. The following table reflects the average rental period per tenant of each mobile home for 1978 and 1979: 1978
Average
Average
Number of
Number of
Lot
Number of
Total Months
Average Rental
Tenants
Tenants
Staying
Staying
Number [3]
Tenants
Rental
Period (Months)
Less Than
30 Days
30 Days
or More
1
1
12
12
0
1
2
6
11
1.83
0
6
3
4
12
3
0
4
5
4
12
3
0
4
6
5
12
2.4
0
5
7
5
10
2
0
5
9
1
12
12
0
1
10
5
12
2.4
0
5
11
5
11.5
2.3
0
5
12
1
12
12
0
1
13
6
11.5
1.9
0
6
14
4
12
3
0
4
15
2
12
6
0
2
16
5
11
2.2
0
5
17
3
12
4
0
3
18
1
12
12
0
1
19
1
12
12
0
1
1979
1
1
12
12
0
1
2
2
2
1
0
2
3
6
12
2
0
6
5
5
12
2.4
0
5
6
4
6
1.5
0
4
7
5
9
1.8
0
5
9
1
12
12
0
1
10
2
12
6
0
2
11
5
11
2.2
0
5
12
1
12
12
0
1
13
3
5
1.66
0
3
14
4
11
2.75
0
4
15
1
12
12
0
1
16
3
5
1.67
0
3
17
5
12
2.4
0
5
18
5
12
2.4
0
5
19
2
12
6
0
2
*189 Aside from the averages, petitioners' rental records for the years 1978 and 1979 show only one tenant who stayed in a unit for less than one month. On their 1979 tax return, petitioners claimed a carryover of unused investment tax credit from 1978 in the amount of $2,763. The carryover credit was claimed on the same 17 mobile homes and the same cost figures for which the investment tax credit was claimed in 1978. Petitioners also claimed in connection with their mobile home business deductions of $120 and $300 for the 1978 and 1979 taxable years, respectively, labelled as "office rent." This item involved an office in their home. During 1978 and 1979, petitioners owned a three-bedroom house in Newton, Kansas. Petitioners used one of the three bedrooms, a room 12' X 12', in their personal residence to store rental records, a typewriter, and a file cabinet. Petitioner also used the bedroom to prepare income tax returns and to *190 handle any of their business matters whether or not related to the mobile home business. There is no evidence in the record substantiating the amounts claimed for the home office. Petitioners purchased a 1974 Lincoln Continental Mark IV in 1976 for $6,400. The Lincoln was used to show mobile homes and collect rent. Petitioners' claimed a mileage expense of $595 for use of the car in 1978, which was based on 3,500 miles at 17" per mile. A depreciation deduction of $914.29 was also claimed for the car for 1978, which was computed on the straight/line basis with a seven-year useful life. Respondent allowed $304 for mileage expense in 1978, representing 1,790 miles at 17" per mile. On their 1979 return, petitioners claimed a $600 deduction for gas, lube, and oil expense in connection with the Lincoln. There is no evidence in the record substantiating this figure. Petitioners again claimed a depreciation expense of $914.29 for 1979. However, they did not claim mileage for 1979. Petitioners did not maintain any contemporaneous records of the business mileage or personal mileage driven in the Lincoln for either 1978 or 1979, and they did not submit any evidence establishing *191 the percentage of business usage for either year. In his statutory notice of deficiency, respondent disallowed in full the claimed investment tax credit for 1978 and 1979, the claimed home office deductions for 1978 and 1979, the claimed depreciation deductions for the automobile for 1978 and 1979, and the gas, lube, and oil expense for 1979. The notice of deficiency also disallowed the $595 claimed by the taxpayers as a mileage expense in 1978, allowing a total of $304 instead. No mileage expense was claimed or allowed for 1979.
OPINION I Investment Tax Credit
We have found as a fact that petitioners purchased 17 mobile homes in 1978 for a total purchase price of $72,600. Petitioners contend that they are entitled to an investment tax credit for such purchases. To be eligible for an investment tax credit under section 38 of the Code, the mobile homes must first qualify as "section 38 property." That term is defined in section 48(a)(1), which provides, in part, that "Except as provided in this subsection, the term 'section 38 property' means--(A) tangible personal property * * *." It is clear that a mobile home can constitute tangible personal property, thereby *192 meeting this first requirement. See Moore v. Commissioner,58 T.C. 1045 (1972), affd. per curiam 489 F. 2d 285 (5th Cir. 1973). Respondent agrees that the mobile homes here in question are tangible personal property. However, under section 48(a)(3), even tangible personal property will not qualify as "section 38 property" if it is "used predominantly to furnish lodging or in connection with the furnishing of lodging." An exception to this latter rule is found in section 48(a)(3)(B), which provides that "property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accomodations is used by transients" will not be subject to the restriction contained in section 48(a)(3). [4]
*193 Pursuant to his authority to prescribe all "needful rules and regulations," section 7805(a), the Secretary promulgated section 1.48-1(h)(2)(ii), Income Tax Regs., to further delineate the scope of this exception to the rule that property used predominantly to furnish lodging is ineligible for the investment tax credit. That regulation provides that: (ii) Property used by a hotel or motel. Property used by a hotel, motel, inn, or other similar establishment, in connection with the trade or business of furnishing lodging shall not be considered as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging, provided that the predominant portion of the living accommodations in the hotel, motel, etc., is used by transients during the taxable year. For purposes of the preceding sentence, the term "predominant portion" means "more than one-half". Thus, if more than one-half of the living quarters of a hotel, motel, inn, or other similar establishment is used during the taxable year to accommodate tenants on a transient basis, none of the property used by such hotel, motel, etc., in the trade or business of furnishing lodging *194 shall be considered as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging. Accommodations shall be considered used on a transient basis if the rental period is normally less than 30 days. [Emphasis added.] Respondent, on the authority of section 48(a)(3) of the Code and section 1.48-1(h)(2)(ii), Income Tax Regs., contends that petitioner is not entitled to an investment tax credit on the purchase of the mobile homes. Respondent asserts the mobile homes are used predominantly to furnish lodging and the predominant portion thereof are rented to non-transients. Therefore, the exception found in section 48(a)(3)(B) is inapplicable. Petitioners, on the other hand, contend that the mobile homes should be eligible for the investment tax credit. Petitioners' main argument is that the Secretary was arbitrary and capricious in defining the term "transient" in section 1.48-1(h)(2)(ii), Income Tax Regs., as a rental period of "normally less than 30 days." Petitioners ask this Court to rewrite the regulation and define "transient" as a period of two, three, or four months. We decline to do so, and we agree with respondent. *195 In Moore v. Commissioner,supra,58 T.C. at 1053-1054, this Court expressly upheld the validity of the regulation challenged by petitioners. We stated that the provisions of section 1.48-1(h)(2)(ii), Income Tax Regs., were consistent with the committee reports accompanying the initial enactment of the investment tax credit. Petitioners have advanced no arguments that persuade us otherwise. We adhere to our holding in Moore v. Commissioner,supra, that section 1.48-1(h)(2)(ii) is a valid interpretation of Code section 48(a)(3). [5]
Applying section 1.48-1(h)(2)(ii), Income Tax Regs., to the facts of this case, it is clear that petitioners are not entitled to an investment tax credit for the purpose of the mobile homes here in issue. The mobile homes were all leased pursuant to oral contracts between petitioners and the various tenants. The mobile homes were rented on a month-to-month basis. As illustrated by the table set forth in our findings of fact, the average rental period well exceeded one month. In only one instance during either 1978 or 1979 did *196 any of the tenants rent any of the mobile homes for a period of less than 30 days. Except for that one instance, all of the 17 mobile homes were at all times rented to tenants who occupied them for a period of 30 days or longer. Therefore, the "predominant portion" of the living accommodations were not used by "transients" during the taxable years here in issue, as those terms are defined in section 1.48-1(h)(2)(ii), Income Tax Regs. Therefore, petitioners cannot bring themselves within the section 48(a)(3)(B) exception to the rule that tangible personal property used predominantly to furnish lodging is ineligible for the investment tax credit. [6] Accordingly, respondent's disallowance of the investment tax credit for the mobile homes was proper. *197 II Home Office Deduction
Petitioners also claimed various deductions on their 1978 and 1979 tax returns for office-in-home expenses. The deductibility of office-in-home expenses has been governed by section 280A since that section was added to the Code by section 601(a) of the Tax Reform Act of 1976, Pub. L. 94-455, 1976-3 C.B. (Vol. 1) 1, 45-48, effective for taxable years beginning after December 31, 1975. The general rule of section 280A is that deductions for an office in the home are not allowable. [7] However, section 280A(c) provides certain limited exceptions to the rule that office in home expenses are generally not allowable. [8] These exceptions contain stringent requirements that must be met before expenses of maintaining an office in the home are deductible. *198 Petitioners have the burden of proof on this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Unfortunately, the scant evidence presented by petitioners falls short of satisfying this burden. The sole evidence presented on this issue is Mr. Koerner's brief, general testimony concerning the use of the room as an office. On the skimpy evidence in the record, we cannot find that the home office was the principal place of business of the mobile home business or that it was a place of business used by petitioners' customers. Also there is no substantiation as to the amounts claimed. Based on the record herein, we must conclude that petitioners have failed to demonstrate they are entitled to deduct the expenses of their "home office." Accordingly, respondent's disallowance of these expenditures was proper. III Mileage Expense; Depreciation; Gas, Lube, and Oil Expenses
A similar problem exists with respect to the deductibility of local travel expenses that is present with the claimed home office deduction: petitioners have the burden of proof and have failed to meet it. Welch v. Helvering,supra; *199 Rule 142(a), supra. At trial, petitioners offered no evidence to substantiate the fact that such expenses were actually incurred nor the amount of any such expenditures, other than Mr. Koerner's vague, general testimony. In fact, Mr. Koerner testified at trial that no such records were made or kept. Faced with this record, we have no choice except to conclude that petitioners are not entitled to deduct these expenses. For the year 1978, petitioners claimed both the optional method (business mileage computed at the standard mileage rate) and depreciation. Petitioners now seem to concede, as they must, that the optional method is an alternative to actual expenses, including depreciation allowances, and that they cannot have both. Nash v. Commissioner,60 T.C. 503, 520 (1973). Petitioners no doubt would prefer the depreciation allowance since that is the larger figure. However, there is no evidence that would permit us to compute a proper depreciation allowance. Petitioners claimed depreciation on the straight-line basis with a useful life of seven years ($6,400 / 7 = $914.29) and are trying to depreciate their full purchase price as a business expense. *200 However, there is no evidence as to the percentage of business usage of this car, and we cannot accept the 100 percent business usage petitioners claimed. For the taxable year 1978, respondent allowed petitioners a mileage expense of 1,790 miles times 17", or $304, and we have no basis on which to allow any greater amount. Since no mileage expense was claimed by petitioners for 1979, nor allowed by respondent, we must hold that petitioners are not entitled to any mileage expense deduction for that year. While petitioners may well have had some local business mileage in 1979, we have no basis on which to make any estimate under the Cohan rule and any allowance would amount to sheer "unguided largesse" on our part. Williams v. United States,245 F. 2d 559, 560-561 (5th Cir. 1957). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years involved.↩
2. The $79,000 figure used by petitioners on their returns included the $6,400 purchase price of petitioners' 1974 Lincoln Continental Mark IV that they purchased used in 1976.↩
3. Although there were 20 lots at the Sky-Vue property, only 17 lots involved mobile home rentals. Lots 4, 8, and 20 were "ground rentals" only, meaning that the lessee owned his own mobile home and just rented the lot in question to park it on.↩
4. Section 48(a)(3) provides that: Property Used for Lodging.--Property which is used predominantly to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 property. The preceding sentence shall not apply to-- (A) nonlodging commercial facilities which are available to persons not using the lodging facilities on the same basis as they are available to persons using the lodging facilities, (B) property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients, and (C) coin-operated vending machines and coin-operated washing machines and dryers.↩
5. See also Pickren v. Commissioner,T.C. Memo. 1981-52↩.
6. Petitioners advance two other arguments that do not require lengthy discussion. First, petitioners argue that each mobile home should be treated separately in determining whether section 1.48-1 (h)(2)(ii), Income Tax Regs., is satisfied. This argument is without merit. A close reading of the regulation indicates that an aggregate approach is to be used: either all of the living quarters qualify, or none do. See also Van Susteren v. Commissioner,T.C. Memo. 1978-310. Moreover, separate treatment of each mobile home unit would not change the result for petitioners unless this Court invalidates the regulations, which we will not do. Second, petitioners contend that expressly providing the section 48(a)(3)(B) exception for hotels and motels, but not trailer parks, results in unconstitutional discrimination against trailer parks. However, petitioners do not rent a "predominant portion" of their mobile homes to "transients," thereby failing the other requirements of the exception, so we need not address petitioners' constitutional challenges. Moreover, if petitioners succeeded in knocking down the purported exception for hotels and motels, that would not give petitioners the benefit they seek; they would still be under the general statutory proscription that property used predominantly to furnish lodging is ineligible for the investment tax credit.↩
7. Section 280A(a) provides that: (a) GENERAL RULE.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. ↩
8. Section 280A(c) provides, in pertinent part, that: (c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.-- (1) Certain Business Use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. (2) Certain Storage Use.↩--Subsection (a) shall not apply to any item to the extent such item is allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business.