*Decision will be entered under Rule 155.*

WHITECO INDUSTRIES, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3918-73, 3919-73, 7188-74. Filed December 31, 1975.

*John S. Pennell, Don S. Harnack,* and *George W. Benson,* for the petitioners.
*Harmon B. Dow,* for the respondent.

---

[1] Cases of the following petitioners are consolidated herewith: Whiteco Industries, Inc., and Subsidiaries, docket Nos. 3919-73 and 7188-74.

666

668

OPINION

We must decide whether the petitioner's outdoor advertising signs may qualify for the investment credit of section 38.

Property can qualify for the investment credit only if it constitutes "section 38 property." Such term is defined in section 48(a)(1), which provides in relevant part:

(a) SECTION 38 PROPERTY.—

(1) IN GENERAL.—* * * the term "section 38 property" means—

(A) tangible personal property, or

(B) other tangible property (not including a building and its structural components) but only if such property—

(i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, * * *

The petitioner argues that the outdoor advertising signs qualify for the investment credit either as "tangible personal property" within the meaning of section 48(a)(1)(A) or as "other tangible property" within the meaning of section 48(a)(1)(B). We hold that the signs constitute "tangible personal property." In light of our holding, we do not address the petitioner's alternative contention.

Although this Court has not ruled on the type of property in issue herein, the Court of Claims recently held, in two companion cases, *Alabama Displays, Inc. v. United States,* 507 F. 2d 844 (1974), and *National Advertising Co. v. United States,* 507 F. 2d 850 (1974), that outdoor advertising signs, indistinguishable from the ones before us, constitute tangible personal property. We believe the result reached by the Court of Claims is sound, and for the reasons set forth hereinafter, we reach the same result.

The statute contains no definition of the term "tangible personal property," but committee reports relating to the enactment of the investment credit do contain many statements which are helpful in understanding the types of property intended to be included within the term. The Income Tax Regulations also contain many relevant guidelines. The technical explanations at-

tached to the House and Senate committee reports provide that the term "tangible personal property" for purposes of section 48:

includes any tangible property except land, and improvements thereto, such as buildings or other inherently permanent structures thereon (including items which are structural components of such buildings or structures). * * * [H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 515-516; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 858.]

Thus, all tangible property constitutes tangible personal property unless it is excluded because it is land or an improvement thereto. A building is given as an example of an improvement, but the common characteristic which is attributed to improvements is that they are "inherently permanent structures." Section 1.48-1(c), Income Tax Regs., adopts the same definition of tangible personal property as that given in the technical explanations to the committee reports, and the regulations characterize improvements as "inherently permanent structures."[3] Accordingly, as both parties recognize, resolution of the issue before us turns on whether the petitioner's outdoor advertising signs are "inherently permanent structures."

The term "inherently permanent structure" does not describe a clearly recognizable or defined class of property. The committee report also states: "Tangible personal property is not intended to be defined narrowly here, nor to necessarily follow the rules of State law." H. Rept. No. 1447, *supra,* 1962-3 C.B. at 415. Thus, although under State law, fixation to the land is a basis for distinguishing personal property from other property, such basis is not to be relied upon for purposes of deciding what property may qualify for the investment credit. Such a rule is illustrated by the following statement in the committee report:

Assets accessory to the operation of a business, such as machinery, printing presses, transportation or office equipment, refrigerators, individual air-conditioning units, grocery counters, testing equipment, display racks and shelves, etc., generally constitute tangible personal property for purposes of section 48, *even though such assets may be termed fixtures under local law.* * * * [S. Rept. No. 1881, *supra,* 1962-3 C.B. at 858; emphasis supplied.]

See also H. Rept. No. 1447, *supra,* 1962-3 C.B. at 516.

---

[3] Sec. 1.48-1(c), Income Tax Regs., in relevant part, provides:

(c) *Definition of tangible personal property.* * * * For purposes of this section, the term "tangible personal property" means any tangible property except land and improvements thereto, such as buildings or *other inherently permanent structures* (including items which are structural components of such buildings or structures). * * * [Emphasis supplied.]

In line with such legislative history and regulations, the decided cases have held that affixation to land does not per se exclude the property from the category of tangible personal property. See *Kenneth D. LaCroix,* 61 T.C. 471, 488 (1974); *Estate of Shirley Morgan,* 52 T.C. 478, 483 (1969), affd. per curiam 448 F. 2d 1397 (9th Cir. 1971). In deciding whether property is to be classified as tangible personal property for purposes of the investment credit, the courts have developed several questions to be considered:

(1) Is the property capable of being moved, and has it in fact been moved? *Alabama Displays, Inc. v. United States,* 507 F. 2d. at 849; *Joseph Henry Moore,* 58 T.C. 1045, 1052 (1972), affd. per curiam 489 F. 2d 285 (5th Cir. 1973). The evidence clearly shows that the petitioner's signs are capable of being moved and have in fact been moved.

(2) Is the property designed or constructed to remain permanently in place? *Joseph B. Weirick,* 62 T.C. 446, 451 (1974); *C. C. Everhart,* 61 T.C. 328, 330 (1973); *Beverly R. Roberts,* 60 T.C. 861, 866 (1973). The evidence in this case indicates that the petitioner's signs are not designed or constructed to last permanently. They are designed or constructed to last for the term of a contract between the petitioner and one of its advertisers. On the average, the term of a contract will last only 5 years. At the end of such period, the sign structure requires substantial renovation. A new sign face must be attached, some stringers must be replaced, and poles are either replaced or straightened and recemented.

(3) Are there circumstances which tend to show the expected or intended length of affixation, i.e., are there circumstances which show that the property may or will have to be moved? *Alabama Displays, Inc. v. United States, supra; Kenneth D. LaCroix,* 61 T.C. at 487. The petitioner does not intend, nor could it realistically expect, the signs to remain permanently in place. The petitioner realizes that in numerous situations it may have to move its signs at the expiration of a contract with an advertiser, or prior thereto. The signs may have to be moved because the owner of the leased land does not renew the lease or exercises his option to develop his land, or because there is a change in the location of the road or the occurrence of some other condition which makes the position of the sign no longer desirable. The Court of Claims placed great emphasis upon such

facts to demonstrate the inherently temporary nature of the affixation of the signs therein. *Alabama Displays, Inc. v. United States,* 507 F. 2d at 845; *National Advertising Co. v. United States,* 507 F. 2d at 851-852. Such court also used such facts to distinguish the signs therein from the pilings which were used to secure a floating dock and which we found were not tangible personal property. *Estate of Shirley Morgan, supra.*

(4) How substantial a job is removal of the property and how time-consuming is it? Is it "readily removable"? *Estate of Shirley Morgan,* 52 T.C. at 483. The disassembly and removal of a sign is a relatively quick and easy process. Although specific figures were not supplied for the time necessary to remove the sign face and the stringers, it appears that the process may be accomplished quickly, using merely a hammer and a sledge hammer or an ax. Removal of the poles for a 40-foot sign takes only an hour or an hour and a half.

(5) How much damage will the property sustain upon its removal? *King Radio Corp. v. United States,* 486 F. 2d 1091, 1096 (10th Cir. 1973). Much of the sign assembly is not damaged when it is moved. The only necessary wastage is that portion of the poles surrounded by concrete, but the remaining portions of the poles are used for other signs. If the sign is moved upon the expiration of a contract with an advertiser, the sign face is also replaced.

(6) What is the manner of affixation of the property to the land? *Joseph B. Weirick, supra; C. C. Everhart, supra; Beverly R. Roberts, supra.* The poles on which the petitioner's signs are mounted are placed in the ground and surrounded by concrete; yet, such poles can easily be removed from the ground, and as a matter of practice, they are so removed.

In our judgment, the application of these criteria to the facts of this case leads to the conclusion that the outdoor advertising signs of the petitioner were not inherently permanent. They were not expected to last indefinitely; inevitably, they would have to be moved in a relatively short time; and they could be removed easily. Such signs are manifestly less permanent in nature than other properties which the courts have found to be tangible personal property for purposes of the investment credit: *King Radio Corp. v. United States, supra; Minot Federal Savings & Loan Assn. v. United States,* 435 F. 2d 1368 (8th Cir. 1970) (movable partition system fastened to the floor and ceiling by

screws or masonry nails); *Marineland of the Pacific, Inc.,* T.C. Memo. 1975-288 (338-foot sky tower); *Joseph B. Weirick,* 62 T.C. 446 (1974) (holddown towers for a ski lift and its cable support as well as wooden passenger ramps); *Joseph Henry Moore,* 58 T.C. 1045 (1972) (mobile homes placed on concrete blocks); *Estate of Shirley Morgan,* 52 T.C. 478 (1969) (a floating dock held down by pilings). Moreover, the Income Tax Regulations specifically provide that "neon and other signs, which * * * [are] contained in or attached to a building" are tangible personal property for purposes of the credit allowed by section 38. Sec. 1.48-1(c), Income Tax Regs. Certainly, such signs may be constructed, designed, and affixed in a much more permanent fashion than the signs of the petitioner.

In deciding what property qualifies for the investment credit as tangible personal property, some very subtle distinctions have been suggested. It is difficult to reconcile the position maintained by the Commissioner in this case with his own rulings. He has allowed property, far more inherently permanent than the petitioner's signs, to qualify: Rev. Rul. 74-602, 1974-2 C.B. 12 (gasoline storage tanks of approximately 8,000-gallon capacity (located usually below ground but some above ground and not generally moved during useful life) and associated piping in a retail gasoline station); Rev. Rul. 71-104, 1971-1 C.B. 5 (burner and 14-story preheater structure for cement kiln facility); Rev. Rul. 70-236, 1970-1 C.B. 8 (liquified petroleum gas equipment); Rev. Rul. 70-160, 1970-1 C.B. 7 (boiler facility to produce steam used in the manufacture of furniture); Rev. Rul. 70-103, 1970-1 C.B. 6 (a diesel generator, fuel tanks, exhaust equipment, a chlorinator, vault doors with combination locks, dehumidifiers, pumps, space heaters, safety doors, and louvers); Rev. Rul. 69-602, 1969-2 C.B. 6 (propane gas storage tanks and water heaters installed on customers' premises); Rev. Rul. 69-557, 1969-2 C.B. 3 (dry kiln structures to remove moisture from wood); Rev. Rul. 67-349, 1967-2 C.B. 48 (wall-to-wall carpeting installed in guest rooms, office space, bar areas, and dining rooms of a motel); and Rev. Rul. 65-79, 1965-1 C.B. 26 (bank vault doors, night depository facilities, walk-up and drive-up teller's windows). As a court, we must be guided by rational principles in making our decisions, and if those items of property are to be treated as tangible personal property, we see no rational basis for disqualifying the petitioner's outdoor advertising signs.

The Commissioner argues that the petitioner's signs cannot qualify as tangible personal property, in any event, because the House committee report specifically excludes such outdoor advertising signs. The passage on which he relies is:

In order to qualify for the credit, property (other than tangible personal property and research or storage facilities used in the specified activities) must be used as an integral part of one or more of the specified activities. Thus, for example, section 38 property would ordinarily not include such assets as pavements, parking areas, *advertising displays*, outdoor lighting facilities, or swimming pools which, although used as a part of the overall business operation, are not used directly in the specified activities. * * * [H. Rept. No. 1447, *supra*, 1962-3 C.B. at 517; emphasis supplied.]

This same argument was rejected by the Court of Claims in *Alabama Displays, Inc. v. United States,* 507 F. 2d 844 (1974). We also believe the argument is misplaced and therefore reject it.

There are a number of reasons for rejecting the Commissioner's argument. In the first place, it is not clear as to what is meant by the term "advertising displays." There is some indication that the term may have been used to refer to show windows. A spokesman for the American Retail Federation appeared before the Senate Finance Committee and urged the committee to allow the investment credit with respect to a retailer's show windows, and it may have been those show windows to which the committee meant to refer. Hearings Before the Senate Committee on Finance on H.R. 10650, 87th Cong., 2d Sess., part 3, 1019 (1962). In addition, it is not clear that the committee had in mind such property as the petitioner's signs. The committee may have intended to indicate merely that the advertising displays of a person engaged in manufacturing or production were not an integral part of his business, and the committee may not have intended to make any reference to a person who was in the advertising business. The Court of Claims adopted this view of the language in the legislative history. *Alabama Displays, Inc. v. United States, supra.* Moreover, the committee merely indicated that advertising displays are not ordinarily to qualify for the investment credit, but the committee may have had in mind advertising displays that were much more substantial and more permanent than the petitioner's signs. For these reasons, we are not persuaded that the committee intended to indicate that outdoor advertising signs of the type

erected by the petitioner could not qualify for the investment credit.

*Decisions will be entered under Rule 155.*