SHONEY'S SOUTH, INC. AND SHONEY'S SOUTHWEST, INC., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shoney's South, Inc. v. Commissioner
Docket No. 16361-80.
United States Tax Court
T.C. Memo 1984-413; 1984 Tax Ct. Memo LEXIS 258; 48 T.C.M. (CCH) 768; T.C.M. (RIA) 84413; August 6, 1984. Boyce E. Hawk and C. Douglas McDaniel, for the petitioners. Shuford A. Tucker, Jr., for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in the consolidated income tax return filed by petitioners for the fiscal year ended December 26, 1972, in the amount of $21,065.95. After concessions, the only issue remaining is whether certain chandeliers and hanging lanterns used in the restaurants operated by petitioners qualify for investment *259 credit within the meaning of section 48. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Shoney's South, Inc. (hereinafter referred to as petitioner), was incorporated under the laws of Tennessee on August 5, 1970. During the fiscal year ending on December 26, 1972, Shoney's Southwest, Inc. was a subsidiary of petitioner. During the same year petitioner directly and through its subsidiary and franchisees owned and operated more than 100 restaurants located in seven southern states, using the trade names of Shoney's, Captain D, Hungry Fisherman, and Moonraker. However, petitioner's principal place of business at all pertinent times was located in Memphis, Tennessee and the consolidated income tax return for the fiscal year ending December 26, 1972 was filed with the Internal Revenue Service Center at Memphis. During the fiscal year under consideration, petitioner purchased and installed in about 25 of *260 its restaurants a number of chandeliers and hanging lanterns on which it claimed investment credit. Respondent determined that the chandeliers and lanterns were component parts of the buildings in which they were installed and disallowed the credit. In addition to the disputed chandeliers and hanging lanterns the lighting in the dining area of these particular restaurants include recessed spotlights and down lights in the ceiling as well as track lights suspended over the salad bar and food warming stands. The recessed spotlights, chandeliers and hanging lanterns are designed to provide complementary lighting and are arranged in such a manner as to reduce shadow and glare. All the lighting fixtures in the main dining areas are operated continuously during business hours. Those in the auxiliary dining rooms are similar in nature and amount but are not used unless needed to handle overflow crowds. The chandeliers use 15 or 25 watt bulbs. Some have shades over the bulbs while others do not. The hanging lanterns contain 25 or 40 watt bulbs except for those fixtures over the cash register and take-out sales area which contain 75 watt bulbs. The hanging lanterns are generally shaded *261 with colored glass and are suspended low, each being designed and placed so as to provide illumination for one booth or table around the perimeter of the dining room. The recessed spotlights use 75 watt bulbs, white bulbs over the work areas and pink lights over the seating areas. Typically, the dining area of a restaurant will have one or two large chandeliers, containing 24 bulbs per fixture, 10 recessed spotlights and 10 hanging lanterns, but one of the restaurants had a chandelier with 32 bulbs and 70 recessed spotlights. The lighting is controlled by various means. In some restaurants all illumination is controlled by one switch. In others more than one switch is used. Usually the chandeliers, hanging lanterns and recessed spotlights in a given area are all on one circuit but in one of the restaurants the chandeliers, hanging lanterns and recessed spotlights were each on a separate circuit. No restaurant used a rheostat to adjust the amount of artificial light in the dining areas. Respondent's expert, a civil engineer employed by the Internal Revenue Service, visited 19 of the 25 restaurants whose lighting fixtures are in issue. [2] He wrote two reports on his observations *262 and testified at trial. He concluded that the chandeliers and lanterns in issue are structural components of the buildings in which they are located. His conclusion is based in part on the fact that the gross wattage of the chandeliers and the lanterns provided approximately half of the lighting to the dining rooms, while the recessed lighting provided the balance. He also observed that the chandeliers and lanterns were more effective in reducing glare and shadow in the dining areas than the recessed lighting. The chandeliers and lanterns in issue were designed specifically for use in petitioner's business by New Metal Crafts, Inc. Their colors and shapes were chosen to match petitioner's general motif and to complement the *263 interior design of its restaurants. They ranged in price from $300 to $3,500, while the recessed lights cost approximately $35 per light. The chandeliers ranged in weight from 75 to 500 pounds but both the chandeliers and the lanterns were constructed so as to be easily assembled and disassembled. Therefore, they could be removed from one location and shipped to another if needed. Removal did not damage the chandeliers or lanterns. They were replaced on the average of every five to seven years either in connection with general remodeling or for the installation of salad or breakfast bars. OPINION The question before us is whether the chandeliers and hanging lanterns qualify for investment credit under sections 38 and 48. Respondent argues that they do not because they are integral parts of the lighting system and therefore are structural components of the buildings in which they are located. Petitioner contends that the chandeliers and lanterns were installed in the restaurants in addition to their permanent lighting and for the purpose of enhancing the atmosphere of the restaurants. Petitioner argues that the chandeliers and hanging lanterns relate to the operation of the *264 restaurant business rather than to the operation or maintenance of the buildings. Section 48(a)(1) defines property that is eligible for the investment credit. [3] Tangible personal property is included among qualifying property, but structural components of buildings are not. The term "structural components" is defined in section 1.48-1(e)(2), Income Tax Regs., as follows: The term "structural components" includes such parts of a building as walls, partitions, floors, and ceilings, as well as any permanent coverings therefor such as panelling or tiling; windows and doors; all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and ducts; plumbing and plumbing fixtures, such as sinks and bathtubs; electric wiring and lightingfixtures; chimneys, stairs, escalators, and elevators, including all components thereof; sprinkler systems; fire escapes; and other components relating to the operation or maintenance of a building. [Emphasis added.] *265 The regulation is in accord with the legislative history of section 48. See S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 722, where it is stated: Tangible personal property is not intended to be defined narrowly here, nor to necessarily follow the rules of State law. It is intended that assets accessory to a business such as grocery store counters, printing presses, individual air-conditioning units, etc., even though fixtures under local law, are to qualify for the credit. [Emphasis added.] In resolving the issue of the permanency of a particular property, we have addressed the following questions: (1) Is the property capable of being moved, and has it in fact been moved? * * * (2) Is the property designed or constructed to remain permanently in place? * * * (3) Are there circumstances which tend to show the expected or intended length of affixation, i.e., are there circumstances which show that the property may or will have to be moved? * * * (4) How substantial a job is removal of the property and how time-consuming is it? * * * *266 (5) How much damage will the property sustain upon its removal? * * * (6) What is the manner of affixation of the property to the land? * * * Whiteco Industries, Inc. v. Commissioner,65 T.C. 664, 672-673 (1975). See also Standard Oil Co. (Indiana) v. Commissioner,77 T.C. 349, 407-409 (1981); Kimmelman v. Commissioner,72 T.C. 294, 308 (1979). Applying these criteria to the particular facts before us leads to the conslusion that the chandeliers and lanterns are not reasonably permanent. From the record before us we have found that while each of the chandeliers and the hanging lanterns weighed from 75 to 500 pounds they were designed so as to be easily assembled and disassembled. They were also designed to enhance the dining areas of the restaurants in which they were installed by providing complementary lighting and by reducing shadow and glare. They were not the only lights in the area because most of the illumination was provided by recessed spotlights and down lights located in the ceilings. We have also found that petitioner did not intend for the chandeliers and the hanging lanterns to be permanent fixtures. In *267 fact they were replaced by petitioner on the average of every five to seven years and their removal and replacement did not damage or detract significantly from the usefulness of the building. Removal did not damage them and they could easily be used in another location. Therefore, in view of all the foregoing, we conclude that the chandeliers and the hanging lanterns were accessories to petitioner's business rather than components relating to the operation or maintenance of the buildings in which they were located. Consequently, the chandeliers and the hanging lanterns are not structural components of the buildings but instead are tangible personal property and as such qualify for the investment credit. [4]
*268 Decision will be entered
under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, in effect during the year in issue, unless otherwise indicated.↩
2. Petitioners have no objection to the admission of Mr. Wilgus' reports and testimony as an expert in the field of civil engineering. However, they raised an objection at trial, which was renewed on brief, to the admissibility of his conclusion regarding the qualification of the light fixtures for the investment credit. We agree with their objection, and have disregarded his conclusions respecting the application of the law to the facts he described.↩
3. For 1972, section 48 provided as follows: SEC. 48. DEFINITIONS; SPECIAL RULES. (a) SECTION 38 PROPERTY.-- (1) In General.--Except as provided in this subsection, the term "section 38 property" means-- (A) tangible personal property, or * * * Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.↩
4. In Consolidated Freightways, Inc. v. Commissioner,708 F.2d 1385, 1390 (9th Cir. 1983), affg. in part and revg. in part 74 T.C. 768↩ (1980), the Court of Appeals for the Ninth Circuit reversed our determination that certain lighting fixtures were eligible for the investment tax credit. In that case, however, the only fact in the record regarding permanency was that the fixtures were easily removed. That case is, therefore, distinguishable, and, for the present, we have left undecided the question of whether we agree with the Ninth Circuit's reversal.