MUSCO SPORTS LIGHTING, INC., f/k/a SPORTS ACQUISITION CO., SUCCESSOR BY MERGER WITH MUSCO, INC., a/k/a MUSCO SPORTS-LIGHTING, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Musco Sports Lighting, Inc. v. Commissioner
Docket No. 20292-88
United States Tax Court
T.C. Memo 1990-331; 1990 Tax Ct. Memo LEXIS 349; 60 T.C.M. (CCH) 18; T.C.M. (RIA) 90331; July 2, 1990, Filed *349 Decision will be entered under Rule 155. Burns Mossman, for the petitioner. Elizabeth G. Beck and Richard V. Vermazen, for the respondent. CLAPP,Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a $ 122,807 deficiency in petitioner's 1983 corporate income tax. After mutual concessions, the issue is whether petitioner is entitled to investment tax credits claimed in 1981 and 1982 and carried over to 1983. All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. At the time the petition was filed, petitioner's principal place of business was in Muscatine, Iowa. Musco Sports Lighting, Inc. is the successor to Sports Acquisition Co. and Musco, Inc., which merged in 1988. Musco, Inc., a calendar year taxpayer, is the corporation that originally claimed the investment tax credits. Both Musco, Inc. and Musco Sports Lighting, Inc. will be referred to as petitioner. Petitioner manufactures and distributes lighting systems that *351 are used at athletic facilities throughout the United States. Each lighting system is a custom designed unit that is attached to existing or new poles at the customer's facility. In the case of new poles, the lighting system is bolted to the pole before the pole is put in the ground. For existing poles, the system is lifted to the top of the pole and bolted on. A lighting system could be removed from a pole by loosening the bolts and disconnecting the wires. Lighting systems have frequently been removed and installed at other locations. This case concerns lighting systems installed during 1981 and 1982 for 35 customers. Thirty-one of these customers were governmental units as described in section 48(a)(5). Another three customers were tax- exempt organizations as described in section 48(a)(4). The remaining customer was Durango Land & Cattle Co., Inc. (Durango), a private group of four or five individuals formed for the purpose of developing a softball facility. The contracts petitioner entered into with the 35 customers varied in some respects from customer to customer, but had the same general form. Most were entitled "Lighting Service Agreement." The customers made an *352 initial payment that covered the first year and had the right to renew and pay additional annual "service fees" for each of the next 4 or 5 years. The agreements provided that the lighting systems were petitioner's property, that petitioner had the exclusive right to exercise possession and control over the lighting systems, and that petitioner had the sole responsibility for maintaining the lighting systems. The customers were responsible for maintaining the electrical systems to which the lighting systems were attached and for paying the reasonable costs of repairing any casualty damage. The customers had options to purchase the equipment after 5 or 6 years, generally for a price of $ 30 per lamp/fixture. All customers except Durango ultimately acquired ownership of the lighting systems. Petitioner claimed investment tax credits for the lighting systems installed for the 35 customers. It did not claim investment tax credits for the poles or wiring. OPINION The issue is whether petitioner is entitled to the investment tax credits it claimed in 1981 and 1982 and carried over to 1983. *353 Section 38(a) allows an investment credit determined under section 46(a). This credit is a portion of the qualified investment, which itself is a portion of the basis of new and used section 38 property. Sec. 46(a) and (c). Section 38 property does not include property used by the governmental units described in section 48(a)(5). Petitioner has conceded that 31 of its customers are governmental units described in section 48(a)(5). Accordingly, petitioner will be denied an investment tax credit for any lighting systems used by these governmental units. Section 1.48-1(k), Income Tax Regs., provides in part that property used by these governmental units -- means (1) property owned by any such governmental unit (whether or not leased to another person), and (2) property leased to any such governmental unit. * * *
Section 38 property also does not include property (with exceptions not relevant here) that is used by tax-exempt organizations described in section 48(a)(4). Petitioner has conceded that three of its customers are tax-exempt organizations described in section 48(a)(4). Petitioner has conceded that three of its customers are *354 tax-exempt organizations described in section 48(a) (4). Accordingly, petitioner will be denied an investment tax credit for the lighting systems used by these tax-exempt organizations. Section 1.48-1(j), Income Tax Regs., provides in part that property used by these tax exempt organizations -- means (1) property owned by the organization (whether or not leased to another person), and (2) property leased to the organization. * * *
Respondent asserts that the 34 customers who were governmental units and tax-exempt organizations leased the lighting systems from petitioner, and thus petitioner was not entitled to the investment tax credits. Petitioner disagrees and asserts that it merely provided lighting services to the customers. If petitioner is right, the lighting arrangements would not be subject to section 48(a)(4) or (5), and petitioner would be entitled to the investment tax credits. We faced a similar issue in Smith v. Commissioner, T.C. Memo. 1989-318, which involved medical equipment. There, we listed seven factors often used by the Internal Revenue Service when determining whether a transaction involved a *355 lease or a service contract. We also discussed Xerox Corp. v. United States, 656 F.2d 659 (Ct. Cl. 1981), which listed a similar set of factors that can distinguish a lease from a service contract. Finally, we discussed section 7701(e), which did not become effective until 1983. We then said -- The Service's rulings in this area represent an attempt to develop a meaningful test to determine whether an agreement is a service contract or a lease. In the absence of congressional guidance until the introduction of section 7701(e), these rulings provided the following factors which allowed taxpayers to meaningfully distinguish a lease from a service contract: (1) which party has the use and possession or control of the equipment; (2) which party operates the machine; (3) whether the tax-exempt organization pays for the use of the machine for some duration or, instead, pays based upon the number of procedures executed; and (4) whether the equipment is part of a broader, integrated system of equipment and services. [Smith v. Commissioner, T.C. Memo. 1989-318.] *356 We then applied these four factors to a medical scanner and a camera. We noted that the taxpayer retained possession and control of the scanner by keeping it in an office adjacent to the hospital paying for its use. Thus, the taxpayer could effectively render services both to the hospital as well as to patients of other hospitals and clinics. The taxpayer's control of the scanner was further illustrated by its retention of a technician and a physician who were responsible for the scanner's use, operation, and maintenance. The hospital paid for a certain minimum number of procedures, but it was allowed to accumulate credits for unused procedures and on occasion exceeded the minimum number. Although the scanner was not part of a broad and integrated system of services, we concluded that the agreement with the hospital was a service agreement, not a lease. Accordingly, we allowed the investment tax credit. We reached the opposite conclusion with respect to the camera. We noted that the hospital was in possession and control of the camera because the camera was on the hospital premises and was operated by the hospital. In addition, the hospital paid for the camera *357 on a monthly basis, rather than a per-procedure basis. Finally, the camera stood by itself in the hospital and was not interconnected with a broad, integrated system designed to provide services. We concluded that the camera was leased to the hospital, and we disallowed the investment tax credit. The four Smith factors may be applied to petitioner's agreements with the 34 customers. Petitioner did not have the use and possession or control of the lighting systems because the lights were installed at customers' athletic fields across the country and were used in their athletic events. The lighting systems were operated by the customers rather than by petitioner. Although intensity of use affected a customer's cost, this cost was calculated on an annual basis rather than on a per-use basis. Finally, the lighting systems were not part of a broader, integrated system of equipment and services. We conclude that the agreements were leases. Accordingly, no investment tax credit is allowed for the lighting systems used by the 34 governmental units and tax-exempt organizations. We next must decide whether petitioner is entitled to an investment tax credit for the lighting systems *358 provided to Durango. Those lighting systems will be section 38 property eligible for the investment tax credit if, among other requirements, they were tangible personal property or other tangible property. Sec. 46(a)(1). Petitioner does not argue that the lights were other tangible property. Accordingly, we must decide whether the lights were tangible personal property. Section 1.48-1(c), Income Tax Regs., states -- For purposes of this section, the term "tangible personal property" means any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures). Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are not tangible personal property. Tangible personal property includes all property (other than structural components) which is contained in or attached to a building. * * *
We have stated that *359 all tangible property constitutes tangible personal property unless it is excluded because it is land or an "inherently permanent structure." Whiteco Industries, Inc. v. Commissioner, 65 T.C. 664, 671 (1975); Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. 349, 405 (1981).In Standard Oil, we considered whether the investment tax credit extended to service station signs and lights which were affixed to poles. We stated -- Without extensive consideration, it is clear to us that, under the standards enunciated in the Whiteco case, the sign heads and light fixtures are not affixed to anything in an inherently permanent way. Thus, they are "tangible personal property." [Standard Oil Co. (Indiana) v. Commissioner, supra at 406.]
The lights in the instant case were merely bolted to the poles so, like the signs and lights in Standard Oil, they were not affixed to anything in an inherently permanent way. Accordingly, they were "tangible personal property." Respondent also argues that the agreements at issue were sale agreements rather than lease agreements, and that for this reason petitioner *360 is not entitled to investment tax credits. However, respondent does not appear to make this argument with respect to the lighting systems provided to Durango, and we have already disallowed the investment tax credit for the lighting systems provided to the other customers. In any event, Durango never purchased the lighting systems provided to it, and we hold that petitioner is entitled to the investment tax credit for these lighting systems. Decision will be entered under Rule 155.