128 T.C. No. 8

UNITED STATES TAX COURT

LEO AND EVELYN TRENTADUE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3510-04.                Filed April 3, 2007.

Ps depreciated trellising, drip irrigation systems, and a well as farm machinery or equipment, in connection with their farming activity of growing wine grapes. R determined that such property would have a longer class life and be depreciable as permanent improvements to land.

<u>Held</u>: The trellising was properly classified as farm machinery or equipment, and the irrigation systems and well should be classified as land improvements.

<u>Philip J. Terry</u>, for petitioners.

<u>Cathy A. Goodson</u>, <u>H. Clifton Bonney, Jr.</u>, and <u>Andrew R. Moore</u>, for respondent.

## OPINION

GERBER, Judge: Respondent determined income tax deficiencies for petitioners' 1999 and 2000 tax years in the amounts of $12,339 and $5,473, respectively. The deficiencies are solely attributable to respondent's adjustments to items connected with petitioners' farming activity, which involved the growing of grapes for the production of wine. The issues remaining for our consideration involve the class life and depreciation recovery periods for three different assets used by petitioners in their farming activity. In particular we consider whether petitioners' wine grape trellises, irrigation systems, and/or well should be depreciated as land improvements, as determined by respondent (20-year class life) or as agricultural equipment, as claimed by petitioners (10-year class life).

## Background

Petitioners are husband and wife and resided in Geyserville, California, at the time their petition was filed in this case. Petitioners have operated, as a sole proprietorship, the Trentadue Winery and Vineyards (farm property) primarily in the immediate vicinity of their personal residence. In addition to petitioners' residence, the farm property includes a winery, a vineyard, an event center, and a well. During 1999 and 2000, the vineyard consisted of approximately 85 acres planted with grapevines. Petitioners sell approximately 75 percent of their

grape production to their own winery, and the remaining 25 percent is sold to unrelated wineries.

Vines of a particular variety are grown in a "block", which is not a standard size area of land. Depending upon the size of the block, petitioners typically used 10 or more individuals to install vines on a block. After the soil has been ripped or broken and nutrients added, the trellis rows are laid out with a mark to identify the location of each vine. A 2-foot trench is dug and a PVC pipe is installed, along with risers at each trellis row for the irrigation system. End and in-line posts are then pounded 2 to 3 feet into the ground, and anchors are screwed into the ground to secure the end posts with guy wires. Various wires are then attached and strung between the posts to train and irrigate the vines. Next, a drip hose is attached to the riser and fastened to the drip wire with clips. Finally emitters are placed on the drip hose at the eventual site of each vine.

As of the time of trial, petitioners were cultivating 12 different grape varietals, including Carignane, Chardonnay, Zinfandel, Petite Syrah, Merlot, Sangiovese, Montepulciano, Petite Verdot, Malbec, Syrah, Cab Franc, and Cabernet. Petitioners used two grape-growing methods--trellising and head pruning. The trellising method involves the use of trellises and a drip irrigation system, whereas the head pruning method does not require a trellis, but drip irrigation may be used.

Petitioners use the head pruning method for their Carignane, Zinfandel, and Petite Syrah grapevines and trellising for the others.

During 1999 and 2000, petitioners' son, Victor Trentadue (Victor), managed petitioners' vineyard operations, including the growing of grapes, and he also managed Trentadue Winery, petitioners' separate business for making wine. Victor also owned his own business called Four Seasons Vineyard Management Co., which installed, maintained, and removed grapevines, trellises and irrigation systems.

Petitioners attached to their 1999 and 2000 Joint Federal Income Tax Returns, a Schedule F, Profit or Loss From Farming, on which they claimed depreciation deductions for, among other items, the trellis components, trellis systems, irrigation systems, and the well. With respect to the above-listed property, depreciation deductions were calculated using a 10-year class life, which includes 7- to 10-year recovery periods.

In the notice of deficiency, respondent determined that the recovery period for each of these properties was 15 years, which would place them in the 20-year class life, which includes 15- to 20-years class lives.

Trellising

Trellising is a method of training vines used in the production of wine grapes. The primary components of a trellis

are posts, stakes, and wires. A trellising system is set up in rows with various types of wires strung between posts. Stakes, anchors, staples, gripples and other types of devices are used to stabilize the posts, attach the wires to the posts and to attach various things to the wires in order to train and maintain the grapevines. During the grape-growing season, wires may be moved or adjusted, and new wires may be added to the existing trellises.

Most trellis systems use the same components and vary in configuration depending upon the topography, soil conditions, farming methods (such as mechanical or hand harvesting of grapes) and other factors. Petitioners use two types of trellising--vertical shoot positioning (VSP) and "T-trellis" design systems. All of the vine trunks are grown to the same height with a VSP trellis system, and the vines grow vertically on the wire. Petitioners' approach is not to permit the vines to engulf or grow over the wire so that the wires can be moved and/or replaced in the training of the vines. A variation on the standard VSP is the "Scott Henry" design where the vines are grown vertically at two, instead of one, levels. A T-trellis configuration consists of a series of T-shaped posts placed in a line where the wires are attached to the crossarms of the T-posts. The local California county's (Sonoma) taxing authority treats the

trellises as property used in vineyard development and not as land improvement.

Although it may not occur often, trellis systems have been dismantled and components reused in a new location. Trellising components become damaged, rust and/or wear out and are repaired and/or replaced throughout the year. The trellising posts, stakes, wires, etc. are regularly adjusted, tightened, and replaced to accommodate the training of the vines for maximum grape-growing performance. Occasionally, trellising may be removed from a few rows of a block or from an entire block of vines, and the major components are reused. Grapevines may be removed from a trellis system without damaging the trellis. Likewise, a trellis system may be removed without damaging the grapevines. It is also possible to remove the vines and reuse the trellising components for the new vines. Vines may be replaced when they become diseased or if a particular varietal becomes unprofitable or unpopular.

The primary structural components that affix the trellis to the earth are the end and in-line posts which are rammed 2 to 3 feet into the ground and stabilized and secured by metal stakes and/or mechanically screwed-in anchors. The end posts may be metal or wood, the wooden posts are 8 to 10 feet in length, and the wood posts may be pressure treated with chemicals to retard

decay.  Metal end posts are approximately 9 feet long and usually 4 inches in diameter.

The posts used between the end posts (in-line posts) are typically 9 feet in length and approximately 4 to 5 inches in diameter if wooden and 3½ inches in diameter if metal.  The wooden posts may be pressure treated with chemicals to retard decay.  The purpose of the in-line posts is to support the wires used to train the vines and support the drip irrigation lines.  The posts support 10- to 14-gauge wires, which in turn support drip irrigation lines, vine cordons and fruit, and foliage.  All wires are attached, by staples and gripples, to the end posts and the in-line posts.  The staples attach the wire to the posts, and the gripples provide the ability to adjust the tension of the wire.

In addition to in-line posts, wood or metal training stakes are pounded 1½ to 2 feet into the ground to support each vine.  The stakes may be wood or metal and are typically 6 feet long, and the wooden ones may be pressure treated.

Concrete or cement is not used to affix the posts to the earth.  Petitioners did not intend for their trellising to be permanently affixed to the earth.

One goal in the use of trellis systems is to improve the intensity and quality of grapes, which, in turn, improves the intensity, quality, and value of the resulting wine.  The manner

in which the grape quality and intensity is improved is to manage the canopy and foliage in an attempt to control sunlight, temperature, and moisture to the vines. Trellising is also used to assist in producing the ideal number of vine shoots and delivering nutrition to the vine. Some wine grape varietals, such as Zinfandel and Petit Syrah, are grown without the use of trellises. About one-half of petitioners' vines are not trellised.

When vines in a particular block are being removed and replaced with new vines, the posts and stakes of the trellising are removed for reuse. Petitioners have removed stakes and posts and stored them for reuse. Good-quality wire is removed and coiled for reuse, and worn or rusted wire or parts are gathered up with the removed vines, the vines are burned, and the remaining wire is sent to recycling and normally not reused. Although time intensive, it is possible to remove and reuse the wire in the trellising. For an 8- or 9-acre block it takes approximately a week for a crew (of approximately 4 to 10 people and machines) to dismantle the trellising, irrigation system, remove the vines, and prepare the soil for the next planting. The time could be shorter or longer depending on the size of the crew. In one instance it took about a week to dismantle an 8- or 9-acre block, the vines and unusable parts were piled, and the

vines were burned about 30 days later, leaving a pile of wire and metal parts that were taken for recycling.

Drip Irrigation

Drip irrigation systems are used to deliver water and other nutrients to grapevines. A drip irrigation system is usually designed for a particular block of vines. Petitioners use drip irrigation systems in connection with trellised vines. Petitioners' systems are composed of PVC pipes, plastic tubing, emitters, risers, and other assorted hardware. The larger supply pipes are 4 to 6 inches in diameter, and there is a series of successively smaller pipes or tubes that ultimately end in drip emitters that deliver water and nutrients to each vine. A substantial portion of the pipes and tubes is buried approximately 2 feet underground and come out of the ground at certain intervals where they are attached to drip lines affixed to wires of the trellis system. The main lines that come to each field or block can be marked and saved if the vines are removed and the ground ripped. The remainder of the piping that delivers water and nutrients to the vines is rendered unusable if the ground is "ripped". Components of drip irrigation systems are subject to damage and wear, and portions of a system are repaired and/or replaced annually.

There was no incidence of the removal of a drip irrigation system separate from the removal of the vines. When the vines

are removed, however, the soil of a vineyard is ripped and the drip irrigation system, with the exception of some of the drip hoses and sprinklers, is destroyed, rendering the components unusable. "Ripping" is a process by which the hardpan (crusted surface of the ground) is opened and broken by means of dragging a large knifelike device through the ground. Normally, ripping takes place when vines are being removed for the planting of new vines. Drip irrigation systems are not designed or constructed to be permanent and may be removed from the ground. The removal, however, results in all piping, with the exception of the main lines that carry the water supply to the block, manifolds, valves, and possibly some drip tubing, being rendered unusable.

The local California county's (Sonoma) taxing authority treats the drip irrigation systems as property used in vineyard development and not as land improvement.

The Well

Water used by petitioners for all uses on their farm property is supplied by a well. In May 1998, petitioners began the process of replacing their old well with a new one. A well permit was approved November 25, 1998, and construction of a new well began on January 18 and was completed on February 5, 1999. The boring of the new well was 17 inches in diameter and drilled to a depth of 156 feet. A 12-inch PVC casing was inserted in the well and set by means of fine sand poured into the boring around

the casing to a height approaching 50 feet from the surface of the ground. The final 50 feet of the well boring was filled with concrete around the 12-inch PVC casing in order to seal the well, and a pump was inserted into the casing. Other than the pump, which can be removed and replaced, the well has no moving parts.

The average life of this type of well is approximately 30 years, but can be longer or shorter depending on the water quality and the existence of minerals in the vicinity that can plug the casing. A well can be maintained and cleaned to stem or remove the buildup of mineral deposits in the well casing. The cost of such procedures ranges from $800 to $1,500. The cost of petitioners' new well was $11,426. Petitioners' old well was destroyed on April 14, 1999, at a cost of $900. The destruction of the old well is accomplished by perforating the casing, filling it with a waterproof clay, and capping it.

In General

For Federal tax purposes, petitioners classified and consistently treated the trellis components, drip irrigation systems, and wells as equipment depreciable over 7 to 10 years for 1999 and 2000 and for all years before and after. Petitioners' certified public accountant, who specializes in wine industry accounting and taxation, advised petitioners that he believed their method for depreciation of the trellising and drip irrigation systems to be correct. As grape growers and wine

makers, it is petitioners' understanding that the industry has treated trellising and drip irrigation systems as equipment depreciable over 7 to 10 years.  In Sonoma County, California, grapevines become subject to property tax 4 years after planting, whereas trellises, stakes, and irrigation systems are subject to such tax beginning in the year of installation.

## Discussion

The parties disagree about whether trellising, irrigation systems, or a well are to be classified as machinery or land improvements for purposes of depreciation.  A depreciation deduction is allowed for the exhaustion, wear and tear, and obsolescence of property used in a trade or business.  Sec. 167(a).[1]  To some extent, the recovery period determines the amount of the depreciation deduction.  Sec. 168.  The recovery period is based on the "class life" of the property.  Sec. 168(c), (e).  There is no question in this case about whether the subject assets are depreciable.

For purposes of this case, "class life" is the asset guideline class in which such property is classified under Rev. Proc. 83-35, 1983-1 C.B. 745, and restated in Rev. Proc. 87-56 to

---

[1] Unless otherwise specified, section references are to the Internal Revenue Code as amended and in effect for the years under consideration.  Rule references are to this Court's Rules of Practice and Procedure.

incorporate the class lives that had been set under section 168.
See Rev. Proc. 87-56, 1987-2 C.B. 674.

Under Rev. Proc. 87-56, 1987-2 C.B. at 677, asset class 00.3,

Land Improvements:

Includes improvements directly to or added to land,
whether such improvements are section 1245 property or
section 1250 property, provided such improvements are
depreciable.  Examples of such assets might include
sidewalks, roads, canals, waterways, drainage
facilities, sewers * * * , wharves and docks, bridges,
fences, landscaping, shrubbery, or radio and television
transmitting towers.  * * *

Under Rev. Proc. 87-56, Asset Class 01.1--Agriculture:

Includes machinery and equipment, grain bins, and fences
but no other land improvements, that are used in the
production of crops or plants, vines, and trees; * * * .

The definitions provided in Rev. Proc. 87-56, supra, do not
specifically denominate or classify trellises, drip irrigation
systems, or wells, and, accordingly, we must decide the category
or class life in which these assets most properly fit.  Generally,
the class life categories cover two broad groupings--permanent
improvements to real property, and machinery and equipment that is
not a real property improvement.

The "Whiteco" Factors

The question of whether property is a permanent improvement
to land has long been a subject of tax controversy.  There are
innumerable depreciation and investment tax credit cases where
this very question has been addressed.  The parties here sought
guidance from one such case where this Court decided whether a

particular asset was a land improvement (i.e., permanent). Whiteco Indus., Inc. v. Commissioner, 65 T.C. 664 (1975). In Whiteco Indus., Inc., the Court analyzed existing caselaw and derived six factors that had been used in other cases to determine whether an asset is an improvement to real property. Id. at 672-673. The Court in Whiteco decided whether advertising signs (outdoor billboards) constitute "tangible personal property" within the meaning of section 48(a)(1)(A), and therefore, may qualify for the investment credit provided in section 38.[2] The statute, definitions, and concepts in Whiteco are sufficiently similar to the ones we consider so that we find it appropriate to use those guidelines to assist the Court in this case. Although there are six tests, they overlap each other, but their primary focus is the question of the permanence of depreciable property and the damage caused to it or to realty upon removal of the depreciable property. No one factor has been considered to be determinative, and the guidelines have been used merely as an aid to deciding whether a particular property is or is not a permanent improvement to real property.

---

[2] Whiteco Indus., Inc. v. Commissioner, 65 T.C. 664 (1975) involved the taxable years 1967 through 1971 and, accordingly, was construing secs. 38 and 48(a)(1)(A), as in effect for those years.

1. The first factor concerns whether "the property [is] capable of being moved, and has it in fact been moved?" Whiteco Indus. Inc. v. Commissioner, supra at 672.

(a) The trellis components comprise posts, stakes, and wires. The posts, which vary in size, are pounded approximately 2 feet into the ground and are secured or stabilized by means of wire and anchors. After the posts are in place, wire is strung between them, and stakes, clips and other attachment devices are used to attach drip lines and to train the grapevines. The record in this case reflects that trellising components could be moved; i.e., the wires, anchors, and post can be dismantled and reused. Respondent made the point, however, that it was not financially practical to move trellis components. Although respondent may be correct about the financial efficacy and practicality, nevertheless the concept being considered has more to do with the concepts of portability versus permanence. There was credible testimony on behalf of petitioners that trellising had been moved and reused, and petitioners' practice was to store used posts and other trellising components for future use. Accordingly, as to the trellising, this factor favors petitioners.

(b) The drip irrigation system comprises pipe, tubing and emitters, risers, and other assorted hardware. A substantial portion of the pipe is located under the ground. The portion above the ground (other than the main lines and valves) brings

water and nutrients to each vine through tubing and drip emitters attached to the horizontal wires.  Most of the drip irrigation systems may not be easily removed from the ground and generally become unusable when they are removed.  For example, if new vines were to be planted, the ground would first be broken by ripping with a large blade that, incidentally, tears up the system of irrigation pipes and tubes from under the ground.  Although it is possible to salvage some of the above-ground tubing, it is not always reusable.  The ripping process, however, damages the pipes and tubes so as to render them unusable.  There was no evidence in the record showing that a buried drip irrigation system had been removed and reused.  Therefore, the drip irrigation system cannot be readily removed from the earth.  This factor, as it relates to the drip irrigation system favors respondent.

(c) The well boring and casing are obviously not capable of being moved, and there is no evidence in the record that it could be moved or removed from the ground.  We note that petitioners' old well was left in the ground and disabled, rather than being removed from the ground.  This factor favors respondent.

2.  The second factor is whether "the property [is] designed or constructed to remain permanently in place?"  Id.

(a) The trellises are intended to be sufficiently secured to support the wires, vines, tubing, etc., but they are not designed to remain permanently in place.  For example, the posts are not

set in concrete. In addition, various components of the trellising are changed or modified to accommodate the growth or the feeding of the vines. This factor favors petitioners.

(b) Conversely, with the exception of risers, plastic tubing, and drip emitters, the drip irrigation system is placed 2 feet underground in rows or lines that follow the rows of vines. The evidence in the record indicates that, with the exception of manifolds, valves, and main lines going to each block, removal of the pipes and tubes is not easily accomplished, and so, for all practical purposes, they are permanently embedded in the ground. This factor favors respondent.

(c) Obviously, petitioners' well was designed and intended to remain permanently in the ground. This factor favors respondent.

3. The third factor concerns whether there "Are * * * circumstances which tend to show the expected or intended length of affixation; i.e., are there circumstances which show that the property may or will have to be moved?" Whiteco Indus., Inc. v. Commissioner, supra at 672.

(a) The trellising and drip irrigation systems are built and/or installed with the intent that they service the grapevines during their useful life. The evidence shows that grapevines are expected to last approximately 25 years, but various factors can affect the usefulness of a vine. A vine may become diseased,

requiring its removal.  A particular variety of wine/grape may decline in demand and become economically obsolescent.

If those events occur, the removal of old vines and the planting of new vines normally necessitate the removal of the trellising and drip irrigation systems.  As a general matter, however, it is intended that trellising and drip irrigation systems remain in place for the life of the grapevines for which they are constructed.  This factor tends to favor respondent with respect to the trellising and drip irrigation systems.

(b) The well is intended to remain in place indefinitely; however, wells have a limited usefulness due to minerals and other things in the water that can obstruct the well casing and pump equipment.  Generally, a well is expected to last more than 20 years.  Accordingly, this factor favors respondent with respect to the well.

4.  The fourth factor is "How substantial a job is removal of the property and how time-consuming is it?  Is it 'readily removable'?"   Id., at 673.[3]

---

[3] The relevance of the "movability" of an asset was discussed in Hosp. Corp. of Am. & Subs. v. Commissioner, 109 T.C. 21, 57-58 (1997).  We found the following discussion from that case to be instructive:

   Movability itself is not the controlling factor in deciding whether the property lacks permanence. Kramertown Co. v. Commissioner, 488 F.2d 728, 731 (5th Cir. 1974), affg. T.C. Memo. 1972-239; see also Consolidated Freightways v. Commissioner, 708 F.2d
(continued...)

(a) The installation of trellising is labor intensive, and, likewise, the removal of the trellising would be labor intensive if the components were being salvaged for future use.  Clearly, the poles and likely the stakes could be easily salvaged for reuse.  The wire and related materials and hardware, however, would be more difficult and time consuming to salvage for reuse. If one merely wished to remove the wire, posts, and related materials, but not for reuse, it could be accomplished quickly with large equipment.  In these situations, the wood, wire, vines, etc. are piled in the field and burned with the metal parts (including the wire) remaining after the fire.  The resulting salvaged materials would not be suitable for reuse.

---

[3](...continued)
1385, 1390 (9th Cir. 1983) (a variety of factors is considered, including, where possible, the function and design of the component in issue, the intent of the taxpayer in installing the component, and the effect of removal of the component on the building), affg. in part and  revg. in part 74 T.C. 768 (1980); Everhart v. Commissioner, 61 T.C. 328, 331 (1973) (moveability per se does not determine whether or not property is personal property); Dixie Manor, Inc. v. United States, 44 AFTR 2d 79-5442, 79-2 USTC par. 9469 (W.D. Ky. 1979) (fact that walls often are removed because of a change in design by itself is not sufficient), affd. without published opinion 652 F.2d 57 (6th Cir. 1981). The fact that an item is not readily reusable in another location is evidence supporting the conclusion that it is to be treated as permanent in its present location. Mallinckrodt, Inc. v. Commissioner, 778 F.2d 402, 403 (8th Cir. 1985), affg. per curiam T.C. Memo. 1984-532.

Id. at 57-58.

Accordingly, with respect to the trellising, this factor works both ways and is neutral, not favoring petitioners or respondent.

(b) Installation of a drip irrigation system is likewise labor intensive, and, its removal would be time consuming if the components were being salvaged for future use. Similarly, if the drip irrigation system were removed by means of the ripping process, the removal would be quick and inexpensive, but the pipe, tubing, and related hardware would, to a great extent, be rendered unusable in the removal process. Therefore, with respect to the drip irrigation system, this factor works both ways and is neutral, not favoring petitioners or respondent.

(c) The well would obviously not be readily removed from the earth, and, accordingly, this factor favors respondent as to the well. Evidence in this case reflected that when a well has served its usefulness, its tangible components are disabled in place, rather than removed from the ground.

5. The fifth factor concerns "How much damage will the property sustain upon its removal?" Whiteco Indus., Inc. v. Commissioner, supra at 673.

(a) As it relates to the trellising and drip irrigation systems in this case, the fifth factor is the converse of the fourth factor. If those components/systems were carefully removed, the time consumption or cost would be great, and the damage would be small. Conversely, if the components/systems are

quickly removed, the damage to the property would be great. Accordingly, this factor works both ways and is neutral, not favoring petitioners or respondent.

(b) The well is permanently affixed to the realty, and, accordingly, this factor favors respondent. We note that the old well was disabled by perforation and filling rather than removal from the ground.

6. The sixth factor addresses "the manner of affixation of the property to the land?" Id. In Whiteco the Court noted that "The poles on which the * * * [taxpayer's] signs are mounted are placed in the ground and surrounded by concrete; yet, such poles can easily be removed from the ground, and as a matter of practice, they are so removed." Id.

(a) Petitioners' trellising, similar to the advertising signs in Whiteco Indus., Inc. v. Commissioner, 65 T.C. 664 (1975), were placed in the ground to a depth of 2 to 3 feet. Unlike the posts in Whiteco, petitioners' trellising posts were not set in concrete, making them even less difficult to remove from the ground than the posts in Whiteco. The posts are stabilized with wires and anchors which screw into the ground and may be unscrewed. Accordingly, the trellising component system may easily be removed from the ground, favoring petitioners with respect to this factor.

(b) Although the drip irrigation system is not permanently affixed in the ground, it is, for the most part, buried in trenches or cuts in the ground. Accordingly, the drip irrigation systems may not be easily removed from the ground, favoring respondent with respect to this factor.

(c) The well, which is bored deeply into the ground and set in concrete for almost one-third of its 156-foot length, would be most difficult to remove from the ground, and, accordingly, this factor favors respondent.

Final Analysis

In the context of petitioners' grape-growing and winery operation there are assets which clearly fit into the category of permanent improvements.[4] One such example would be the winery building that is permanently affixed to the real property. It is clear to this Court that petitioners' well fits within that category and is no different from other permanent improvements to the real property and should be included in the 20-year class life for purposes of depreciation. The six Whiteco

---

[4] The parties made some arguments about the local taxing authorities' classification of the assets we consider. Such classifications, however, are not controlling in matters of Federal taxation, and we have been guided by the Federal statutes and case precedent. In addition, petitioners attempted to show that respondent had not previously questioned petitioners' depreciation practices; however, there is ample precedent to the effect that each tax year is considered separately, and the Commissioner's failure to question or his informal approval of a practice in a prior year does not amount to an estoppel.

Indus., Inc. v. Commissioner, supra, factors serve to verify and support this result.

At the other end of the spectrum of assets used in petitioners' grape-growing operation, a tractor would be an example of machinery and equipment that is not a permanent improvement to land so as to classify it within the 10-year class life for purposes of depreciation. The trellising and drip irrigation systems fall somewhere between permanent buildings and farm machinery, such as tractors, and in some ways are intended to have permanence and in other ways do not. The component parts of trellising and drip irrigation systems are personal property before they are configured and placed in or on the ground. By themselves, the posts, stakes, wire, pipe, and tubing are all personal property and could not be considered a "permanent land improvement". It is the manner in which they are combined and/or affixed in the ground that changes their classification from personal to "real property".

There is no bright-line test by which such assets could be readily classified as always being permanent land improvements or farm machinery or equipment. For example, an above-ground irrigation system would more likely be classified as machinery or equipment, whereas one buried in the ground would more likely be classified as a permanent land improvement. In each instance of an asset that is not clearly in one category or another, we must

consider these factors on an ad hoc basis.

With respect to the trellising components, they are quite similar to fencing with the major difference being that one is intended to keep things in or out and the other to support grape-growing equipment or train grapevines. Both have posts that are set in the ground and some form of wire as components. Clearly, a trellis may have more components and/or be more complex than a fence, but both are similarly constructed and maintained.

In that regard, Rev. Proc. 87-56, supra, to the extent pertinent here, categorizes the 10-year class life as one including machinery and equipment, grain bins, and fences but no other land improvements, that are used in the production of vines. In that regard, petitioners contend that trellising is farming equipment and not a land improvement. Conversely, respondent contends the trellising is an improvement to land. Adding to the complexity of categorizing the trellising in one class life category or the other is case precedent holding that posts anchored in concrete were not considered permanent improvements to realty. Whiteco Indus., Inc. v. Commissioner, supra. In this case, the trellising posts are the component by which the trellis is attached to the ground. We note that petitioners did not use concrete to fix the posts in place. Therefore, petitioners' position in this case is stronger than the taxpayer's position in Whiteco.

Respondent's best argument is the fact that the trellising is intended to last as long as the grapevines, which have an expected life of approximately 25 years. Respondent also makes the point that it may not be economically practicable to remove the trellising. Petitioners' best arguments are that irrespective of the economics, they have dismantled, moved, stored, and/or reused trellising, and it is not permanently affixed to the ground.

Respondent also attempts to convince us that a trellis is "not machinery in the ordinary sense of the word." Perhaps respondent expects us to see generically a complex machine, such as a tractor with an internal combustion engine, when we think of the concept of a "machine". A "machine", however, may be a simple lever. The posts and stakes used by petitioners, in combination with the wires, constitute a machine that is adjusted, modified, and changed in order to train grapevines to produce high-quality grapes for the production of wine. We therefore reject respondent's argument that a trellis is not a machine within the meaning of the statutes and revenue procedures we consider.

As to the Whiteco Indus., Inc. v. Commissioner, supra, factors as applied to trellising, three favored petitioners, one favored respondent, and two were neutral. In that regard, we consider the Whiteco factors and the assets classifications to

mainly distinguish between those things that are permanently affixed to the real estate and those that are not. From that perspective, we hold that trellising is not a permanent improvement to the real property, and, accordingly, petitioners properly classified it in the 10-year class.

The drip irrigation systems, unlike the trellising, are, to a great extent, buried in the ground. Parts of it may be repaired and maintained like the trellises, but a substantial portion of it is under the ground and will remain there until the vines die or are removed for some other reason. This Court has already decided that grapevines are not "tangible personal property" for purposes of section 179. See Kimmelman v. Commissioner, 72 T.C. 294, 308 (1979), where the Court held that "the grapevines are an 'inherently permanent structure' within the meaning of section 1.179-3(b), Income Tax Regs., and therefore, the grapevines are not tangible personal property."[5] In reaching the holding in Kimmelman, the Court noted that "Most of the vines involved * * * were planted at or around the turn of the century, and none of these vines has been moved since then". Kimmelman v. Commissioner, supra at 308. To a great extent, the underground piping is inextricably connected with the life of the vines.

---

[5] We note that trellising was shown to have been adjusted, moved, or reused without moving or uprooting the vines, whereas there was no such showing with respect to irrigation systems.

By way of analogy, this Court in deciding the question of whether sprinkler heads were an "inherently permanent structure", found that the sprinkler heads, although easily removable, were inseparably attached to an underground water system. Metro Natl. Corp. v. Commissioner, T.C. Memo. 1987-38. The Court in Metro Natl. Corp. held that the underground water system and sprinkler heads were an "inherently permanent structure" and not tangible personal property within the meaning of section 48(a)(1)(A).

With respect to the irrigation systems, four of the six factors favored respondent's position, and two were neutral with respect to the drip irrigation system. Again, the question of permanent attachment to the real property is the primary focus of the factors and asset depreciation classes, and the drip irrigation systems is more akin to a permanent improvement. The placement of a substantial portion of the pipe or tubing in the ground and the difficulty of removing the system are the primary factors that render the irrigation systems we consider here to be permanent land improvements.[6] See, e.g., Mallinckrodt, Inc. v. Commissioner, 778 F.2d 402, 403 (8th Cir. 1985), affg. T.C. Memo.

---

[6] We note that some portions of petitioners' irrigation systems were above the ground and regularly repaired and/or replaced. Items such as tubing, emmiters and the like may have been considered severable from the irrigation systems and not as land improvements if they had been separately claimed and/or accounted for. We were, however, presented with the sole choice of deciding whether the irrigation system, as a whole, was machinery or a permanent land improvement.

1984-532, where the court declared: "The fact that an item is not readily reusable in another location certainly is evidence supporting the conclusion that it is to be treated as permanent in its present location." Accordingly, we hold that the well and drip irrigation systems are permanent improvements to the real property.

Petitioners, as an alternative, argue that if the trellises or irrigation systems are land improvements, they come within the exception of section of Rev. Proc. 87-56, sec. 5.05, 1987-2 C.B. at 676. Because we have decided that petitioners' irrigation systems are, in the context of this case, land improvements, we consider petitioners' argument.

To the extent pertinent, section 5.05 of Rev. Proc. 87-56, 1987-2 C.B. at 676, contains the following special rules incorporated from Rev. Proc. 83-35, sec. 2.02, 1983-1 C.B. at 745:

> "Land Improvements," includes "other tangible property" that qualifies under section 1.48-1(d) of the Income Tax Regulations. However, a structure that is essentially an item of machinery or equipment or a structure that houses property used as an integral part of an activity specified in section 48(a)(1)(B)(i) of the Code, if the use of the structure is so closely related to the use of the property that the structure clearly can be expected to be replaced when the property it initially houses is replaced, is included in the asset guideline class appropriate to the equipment to which it is related.

Respondent argues that in order for Rev. Proc. 87-56, sec. 5.05, to apply, the "irrigation system must be a structure that is essentially an item of machinery and equipment, and there is equipment to which the structure is related from which we can determine the appropriate asset guideline class." We agree with respondent. Because this Court has already decided that grapevines are permanent improvements to land and/or not tangible personal property, petitioners' alternative argument must fail.

Accordingly, we hold that respondent's adjustments are sustained with respect to the irrigation systems and the well. Conversely, we hold that the trellising is not a permanent land improvement and that respondent's determination with respect to the trellising is in error.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.